245 So.2d 159

**STATE of Louisiana**

v.

**Kevin B. BARNES.**

No. 50548.

June 29, 1970.

On Rehearing Feb. 24, 1971.

Boles & Ryan, Charles H. Ryan, Monroe, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Albin P. Lassiter, Dist. Atty. (Robert W. Kostelka, Dist. Atty., on rehearing), Gilbert T. Brown, Jr., Asst. Dist. Atty., for plaintiff-appellee.

SANDERS, Justice.

The State charged Kevin B. Barnes with the possession of marijuana in violation of LSA–R.S. 40:962. He filed a motion to suppress the marijuana, alleging an unconstitutional search and seizure. After an evidentiary hearing, the trial judge overruled the motion. Upon trial, the jury returned a verdict of guilty, and the trial judge sentenced him to imprisonment in the state penitentiary for five years.

The defendant appeals, relying upon fourteen bills of exceptions reserved in the trial court.

## BILL OF EXCEPTIONS NO. 1

Defendant reserved Bill of Exceptions No. 1 to the overruling of his motion for a preliminary hearing.

The State filed the Bill of Information against the defendant on August 25, 1969. On September 8, 1969, defendant appeared in court with his counsel for arraignment. After defendant entered a plea of not guilty, the case was assigned for trial. Through his counsel, defendant then made an oral motion for a preliminary examination.

Article 292 of the Louisiana Code of Criminal Procedure provides:

"Before the finding of an indictment or the filing of an information the court, on request of the state or of the defendant, shall immediately order a preliminary examination in felony cases.

"After the finding of an indictment or the filing of an information an order for a preliminary examination in felony cases may be granted by the court at any time either on its own motion or on request of the state or of the defendant."

■ Under the authority of the above article, this Court has often held that after the filing of an information, the granting of a preliminary examination rests within the discretion of the trial court. His ruling on the motion will not be disturbed in the absence of a clear showing of an abuse of discretion. See State v. Hudson, 253 La. 992, 221 So.2d 484; State v. Singleton, 253 La. 18, 215 So.2d 838; State v. Manuel, 253 La. 195, 217 So.2d 369.

■ The showing made in the present case is insufficient to establish an abuse of discretion.

## BILL OF EXCEPTIONS NO. 2

■ The second bill of exceptions was reserved during the hearing of the motion to suppress evidence. During the cross-examination of Deputy Sheriff William O.

Causey, a state witness, the Deputy Sheriff referred to certain written notes in his possession to refresh his recollection. The notes were part of a police report prepared by another Deputy Sheriff. The defendant objected to the witness using the report to refresh his memory, on the ground that the witness did not compile it himself. The trial judge overruled the objection.

In his *Per Curiam,* the trial judge states:

"The report was of the investigation conducted by all of the officers. Although it was written by only one of the officers it was a composite report of the actions of all of the officers and the Court deemed it proper to let Deputy Causey refer to it for the purpose of refreshing his memory."

The ruling is correct. LSA–R.S. 15:279 specifically authorizes such a refreshment of memory in the following language:

"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."

▬▬

■ In his brief filed in this Court, the defendant also complains that the officer's memory was not in fact refreshed, but the court erroneously allowed him to read from the police report. We cannot consider this contention, because it is not properly raised by the bill of exceptions. The bill discloses no such objection, and no testimony is made part of the bill. We only consider testimony that has been made part of a bill of exceptions. LSA–C.Cr.P. Art. 844; State v. Thomas, 242 La. 210, 135 So.2d 275; State v. Brown, 236 La. 562, 108 So.2d 233; State v. Honeycutt, 218 La. 362, 49 So.2d 610.

We conclude the bill of exceptions lacks merit.

BILL OF EXCEPTIONS NOS. 3 and 4

■ The defendant reserved these bills during the hearing of the motion to suppress. While Deputy Sheriff Causey was under cross-examination by defense counsel, counsel attempted to question him concerning the search of a house, apparently located near the place of defendant's arrest. The State objected on the ground the motion to suppress was aimed at marijuana taken from defendant's person and not in the search of a house. Hence, the State asserted, the question was irrelevant and immaterial to the subject matter of the hearing. The trial judge sustained the objection.

His ruling is correct. The issue before the court was whether the officers had probable cause to arrest the defendant and a valid basis for the search of his person. The testimony sought was foreign to the issues.

## BILL OF EXCEPTIONS NO. 5

■ Defendant reserved this bill of exceptions to the refusal of the trial judge to order the production of the police reports for his examination.

During the hearing of the Motion to Suppress, Deputy Sheriff Laymon Godwin, on cross-examination by defendant, testified that he had with him in compliance with a subpoena duces tecum issued by the defendant a written report of defendant's arrest. Whereupon, defense counsel asked to examine the written report. The court sustained the State's objection.

We find no error in the ruling. State v. Martin, 250 La. 705, 198 So.2d 897; State v. Cooper, 249 La. 654, 190 So.2d 86; State v. Sbisa, 232 La. 961, 95 So.2d 619.

In State v. Martin, supra, this Court stated.

"The jurisprudence is now well settled that the State is not required to permit inspection of a police report or a prior statement for use in cross-examination of a State witness for impeachment purposes unless the accused first shows that the report indicates that one or more of the material statements therein are contrary to the sworn testimony of the witness."

By brief in this Court, defendant asserts that the witness later referred to the report to refresh his memory. The bill of exceptions does not reflect this. Moreover, no evidence has been made part of the bill. Hence, we do not reach the more difficult legal question that would arise from such a circumstance.

## BILL OF EXCEPTIONS NOS. 6, 7, and 14

The defendant reserved Bill of Exceptions No. 6 to the overruling of his motion to suppress the marijuana seized from his person at the time of his arrest. He reserved Bill of Exceptions No. 7 to the denial of his motion to quash the indictment on the ground that Article 225 C.Cr.P. authorizing the search of an arrested person is unconstitutional. Defendant reserved Bill of Exceptions No. 14 when the court overruled his objection to the admission of the marijuana in evidence.

■ Bill of Exceptions No. 7 can be brushed aside. A motion to quash the indictment is not a proper remedy for an unconstitutional search and seizure. See LSA–C.Cr.P. Arts. 531–534.

■ The motion to suppress is, of course, the proper vehicle to raise the un-

constitutionality of the search and seizure. LSA–C.Cr.P. Art. 703.

 The Bill of Exceptions recites that the court overruled defendant's motion to suppress evidence after a hearing. The Bill incorporates no evidence. Hence, the evidence taken at the hearing cannot be considered. LSA–C.Cr.P. Art. 844; State v. Thomas, supra; State v. Brown, supra; State v. Honeycutt, supra. We accept as correct the facts in the trial judge's *Per Curiam.* See State v. Brown, 248 La. 520, 180 So.2d 410; State v. McAllister, 244 La. 42, 150 So.2d 557. The *Per Curiam* recites:

"The officers were informed that a pot party was in progress at a dwelling located at 812 Pine Street in the City of West Monroe. They were also informed that someone would leave said house in a vehicle for the purpose of going and getting additional drugs. Officer Fincher observed the vehicle leave and attempted to follow it for the purpose of learning where the drugs were to be obtained, however, because of the excessive speed of the vehicle he was unable to follow it. He did recognize the defendant Kevan Barnes, as the driver of the vehicle. Upon the defendant's return to 812 Pine Street in the same vehicle in which he left, he was arrested and searched. Under the circumstances the Court was of the opinion that it was reasonable for the officers to believe that the defendant had illegal drugs in his possession and his arrest was legal. The search of the defendant was incidental to said arrest."

 From our review of the Bill of Exceptions and *Per Curiam,* we are unable to conclude that the trial judge erred.

 When law enforcement officers make a lawful arrest, they must search the person arrested for weapons and incriminating evidence. LSA–C.Cr.P. Art. 225. Such a search violates no constitutional guarantees. See Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 and State v. Ryan, 255 La. 398, 231 So.2d 365.

In Chimel v. California, supra, the United States Supreme Court held:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction."

We conclude the Bill of Exceptions is without merit.

## BILL OF EXCEPTIONS NOS. 8, 9, 10, and 11

 These Bills of Exceptions were reserved when the trial court declined to order the State to answer four questions contained in defendant's application for a Bill of Particulars.

These questions sought the following information:

(1) The identity of the various persons who had possessed the narcotic drug since it was seized from defendant;

(2) Whether the drug had been submitted to chemical analysis;

(3) The results of such chemical analysis; and

(4) The location of the narcotic drug at the present time.

These questions were obviously designed to secure the State's evidence before trial. As we have often held, full pre-trial discovery is unavailable in criminal proceedings. Except for certain types of confessions, the State's evidence is privileged. State v. Fink, 255 La. 385, 231 So.2d 360; State v. Clack, 254 La. 61, 222 So.2d 857; State v. Hall, 253 La. 425, 218 So.2d 320; State v. Hunter, 250 La. 295, 195 So.2d 273.

Hence, the ruling of the trial judge is correct.

## BILL OF EXCEPTIONS NO. 16

 Defendant reserved Bill of Exception No. 16 to the overruling of his motion for a directed verdict. The Bill recites that defendant was entitled to a directed verdict because "the state had failed to prove the existence of any 'guilty knowledge' on the part of defendant in his alleged possession of marijuana."

No evidence is made part of the Bill, but the trial judge states in his *Per Curiam* that there was ample circumstantial evidence from which the jury could have inferred intent or guilty knowledge. This Bill presents nothing for review. State v. Hudson, 253 La. 992, 221 So.2d 484.

## BILL OF EXCEPTIONS NO. 17

Defendant reserved Bill of Exceptions No. 17 when the trial judge declined to give the following special charge to the jury: "Guilty knowledge is an essential ingredient of the crime of possession of narcotic drug."

In his *Per Curiam*, the trial judge states he declined to give the charge because its substance was included in the general charge and the requested charge could not be given without further explanation.

 We have examined the general charge and find the trial judge instructed the jury as to the intent required for the commission of the crime as defined in LSA–R.S. 14:10. In this type of offense,

the intent comprehends guilty knowledge or *scienter*. See State v. Roufa, 241 La. 474, 129 So.2d 743; 18 La.L.Rev. 340.

■ Although the phraseology of the general charge is subject to improvement, we are of the opinion that the instruction as to intent fairly included the concept of knowledge or *scienter*. Moreover, as noted by the trial judge, the special charge would have required further explanation of "guilty knowledge." See 18 La.L.Rev. 340, 341. Under these circumstances, the trial judge committed no error in rejecting the special charge. See LSA–C.Cr.P. Art. 807.

The Bill of Exceptions is without merit.

. For the reasons assigned, the conviction and sentence are affirmed.

BARHAM, Justice (dissenting).

I cannot agree with the majority's disposition of Bill of Exception No. 17.

The bill of information in this case charges that the defendant did "* * * *wilfully and unlawfully possess and have under his control* a narcotic drug, to-wit: marijuana, contrary to the provisions of R.S. 40:962 * * * *"*. (All emphasis mine.) The judge's instructions to the jury relative to the ingredients of the crime follow:

"The defendant in this case is charged with possession of a narcotic drug, marijuana. Other than certain exceptions pro-

vided by law and not involved in this case, *it is unlawful for any person to* manufacture, *possess, have under his control,* sell, give, deliver, transport, prescribe, administer, dispense, or compound *any narcotic drug.* 'Narcotic drug' includes marijuana."

The defendant requested the trial judge to give the following special charge to the jury: "Guilty knowledge is an essential ingredient of the crime of possession of narcotic drug."

Although the statute is silent as to scienter in defining this crime, this court has repeatedly stated that an essential ingredient of the crime of possession of a narcotic drug is "guilty knowledge". State v. Nicolosi, 228 La. 65, 81 So.2d 771; State v. Johnson (on rehearing), 228 La. 317; 82 So.2d 24; State v. Maney, 242 La. 223, 135 So.2d 473, 475; State v. Richard, 245 La. 465, 158 So.2d 828; State v. McIlvaine, 245 La. 649, 160 So.2d 566; State v. Clack, 254 La. 61, 222 So.2d 857. All of these cases which stated that guilty knowledge is an essential ingredient of the crime of possession of narcotics did so as a basis for allowing the State to introduce evidence of the defendant's prior or subsequent convictions or other similar acts or offenses from which could be inferred his guilty knowledge in connection with the crime for which he was being tried.

The charge given here by the trial court failed to include and define a necessary in-

gredient of the crime with which the defendant was charged. The definition of the crime contained in the charge is not even responsive to the crime charged in the bill of information. The special charge requested by the defendant was a totally correct statement of the law under the jurisprudence of this court. It was, in fact, literally lifted from the jurisprudence cited above. The proposed charge needed no further explanation. It used our very language "guilty knowledge", which in my opinion is self-explanatory. The court has used the phrase so often without elucidation that it, too, must accept the language as fully expressive.

The charge given by the trial court would have required any reasonable, fair-minded juror to convict the defendant simply because marijuana gleanings were found in his clothing, for the definition given in that charge makes mere possession a crime.* This is contrary to the legion of cases dealing with this point of law. Nothing could be clearer than the statement in State v. Johnson, supra, which has been adopted and approved repeatedly: "Therefore, *guilty knowledge* is an essential ingredient of the crime of possession of narcotic drugs. The crime of unlawful possession of narcotic drugs as denounced by law *cannot* exist without proof of guilty

knowledge; for, such possession would not be a possession contemplated by the statute."

We commit grave error, I believe, to allow a conviction to stand where the charge to the jury has not correctly defined the crime *and* the correction of that definition offered as a requested special charge was rejected by the trial court.

I respectfully dissent.

## ON REHEARING

McCALEB, Chief Justice.

On the original hearing we affirmed the conviction and sentence of Kevin Barnes, appellant herein, for possession of marijuana, in violation of LRS 40:962. In the opinion we considered fourteen bills of exceptions on which the accused was relying to obtain a reversal of his conviction and sentence, finding that several could not be considered and that others were without merit.

In his application for a rehearing, which was granted, defendant complained of our ruling in regard to only five of the bills— Nos. 6, 7, 14, 16 and 17. Consequently our present consideration is limited to those bills.

---

\* The inclusion of the *definitions* of specific and general criminal intent without a charge that intent was a necessary element of the crime added nothing to the correctness of the charge and did not cure its deficiencies.

Imprimis, we direct our attention to Bill of Exceptions No. 17 for it was primarily because we entertained some doubt as to our original ruling on this bill that the rehearing was granted. The bill was reserved under the following circumstances.

 At the conclusion of the trial, counsel for the accused presented to the court several special charges to be given the jury, No. 6 being that "guilty knowledge" is an essential element of the crime of possession of marijuana. The trial judge refused all of them, and in his per curiam to this bill he explains (in part) that he did so because the substance of the special charges "was covered in the general charge already prepared." To which ruling defense counsel objected and reserved Bill of Exceptions No. 17.[1]

Bill of Exceptions No. 17 does not recite that the general charge did not cover the substance of the requested special charge No. 6. But on the original hearing here appellant urged that it did not, and on this rehearing he asserts that we erred in the holding that "Although the phraseology of the general charge is subject to improvement, we are of the opinion that the instruction as to intent fairly included the concept of knowledge or *scienter*."

We consider it unnecessary, however, to rest our decision on this determination because, in reaching this conclusion, we necessarily adverted to the contents of the general charge. On further examination of the case, we now find that we were without authority to consider whether the requested charge was covered by the general charge since defense counsel did not make the general charge, by attachment or otherwise, a part of Bill of Exceptions No. 17.

It is well settled that the judge's charge to the jury is not a part of the record on a criminal appeal, although physically incorporated therein. State v. Daleo, 179 La. 516, 154 So. 437; State v. Stracner, 190 La. 457, 182 So. 571; State v. Bickham, 236 La. 244, 107 So.2d 458; and State v. Martin, 250 La. 705, 198 So.2d 897. Consequently, it cannot be considered by this Court unless it is attached to or made part of the formal bill of exceptions. That was not done in the instant case.

Under these circumstances we must accept the trial court's ruling that the instruction was not necessary because the substance thereof was contained in the general charge.[2]

Bills of Exceptions No. 6, 14 and 16 presently present the same issue, although the

---

1. We do not find in the record a perfected bill of exceptions based on the sufficiency of the general charge.

2. By this ruling we do not intend to infer that our original conclusion, that the general charge "fairly included the concept of knowledge or *scienter*", was incorrect.

bills themselves present somewhat different issues. On our former hearing we held, as to each of these bills, that there was nothing for us to consider inasmuch as the various portions of the evidence on which they were based were not contained in or made part of the formal bills of exceptions.

The defendant contends that we erred in holding that the evidence must be made part of or attached to the bill, and that the cases cited in support of the holding are not applicable to this case for the reason that in none of them was there both a perfected bill of exceptions relative to the alleged error *and* a transcript of the entire testimony physically in the record.

▬▬ Conceding that counsel's statement relative to these cases is correct, this circumstance is immaterial, because the same rule *has* been applied by this Court in numerous cases where the transcript *did* contain the perfected bill *as well as* the physical presence of the testimony. In them, we have squarely held that this Court can look only to what is contained in the *formal* bills of exceptions for the reason that evidence, to be considered by us, *must be contained in a bill of exceptions,* attached thereto, or incorporated in such bill by reference. See State v. James, 106 La. 462, 31 So. 44; State v. Gaines, 223 La. 711, 66 So.2d 618; State v. Lee, 247 La. 553, 172 So.2d 678; State v. Watson, 247 La. 102, 170 So.2d 107; and State v. Calli-

han, 257 La. 298, 242 So.2d 521. Likewise the rationale of the Court in State v. Cloud, 246 La. 658, 166 So.2d 263, supports the conclusion.

Appellant urges that revisions in the new Code of Criminal Procedure have effected a change in this rule, he particularly relying on certain changes or omissions from the old codal articles, as they presently appear in the new Code of Criminal Procedure in Articles 841–845. A reading of these articles themselves, as well as the comments of the redactors, clearly indicate that any changes or omissions were merely to effect "stylistic revisions" of the source articles when they were considered redundant or repetitious. Moreover, the principal statutory basis for our earlier rulings, now appearing as Article 844, still contains the specific declaration that:

"A. The *appellate court* shall consider *only formal bills of exceptions* which have been signed by the trial judge in conformity with Article 845. * * *

"B. A formal bill of exceptions shall contain only the evidence necessary to form a basis for the bill, and *must show the circumstances and the evidence upon which the ruling was based.* When the same evidence has been made part of another bill of exceptions, the evidence may be incorporated by reference to the other bill. * * *" (Emphasis ours)

▇ Nor do we find that the provisions of Articles 917 and 918 relieve the appellant from the obligation of properly preparing his bills of exceptions as required in Article 844, as is urged by the accused here. They relate simply to the duty of the district court clerk to prepare and deliver to the appellate court the record as ultimately completed. The provisions of Article 917 are the same as the former Code (Article 547). Article 918 is new but it is specifically observed in the "Official Revision Comment" that:

" * * * (b) The recordation and transcription of evidence are not provided for in this Code, but are governed by laws retained in Titles 13 and 15 of the Revised Statutes. See Comment (d) under Art. 844."

Besides, Article 920 specifically stipulates that:

"The following matters and no others shall be considered on appeal:

"(1) Formal bills of exceptions that have been submitted to and signed by the trial court in accordance with Article 845, whether or not the bills of exceptions were made a ground for a motion for a new trial; and

"(2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."

A somewhat similar argument was made in the recent case of State v. Garner, 255 La. 115, 229 So.2d 719, regarding the consideration of evidence not included in a perfected bill. However, we adhered to our firmly established rule that evidence not made part of or attached to a bill of exceptions cannot be considered by this Court, and that the "defendant in a criminal case has the burden of preparing his bills so as to enable this Court to say whether the trial judge erred in his rulings."

It is suggested by the defendant herein that our ruling in Garner was relaxed by this Court in the case of State v. Johnson, 256 La. 592, 237 So.2d 389. But that case did not present the same issue involved here and in Garner. The latter case was not even mentioned in the opinion. In Johnson, the defendant had perfected no bills, within the time allowed following the granting of an appeal. Whereupon the district judge ordered the court reporter to "send the record *as is* to the Supreme Court." The record filed here contained no bills of exceptions and no transcript of the testimony. It was the contention of defendant's counsel, on the appeal, that he could not properly prepare and perfect his bills without a copy of the transcript, which had been denied to him. (There is no contention made here that this accused was not able to obtain all or the necessary parts of the transcript to prepare properly his bills of exceptions.)

Our holding in that case was that (being from Orleans Parish) when the appeal was taken LRS 13:1373 made it incumbent on the court stenographer to transcribe the testimony and to deliver three copies to the clerk of the court; and that, upon this being done, counsel for defendant would then be entitled to obtain a copy thereof, or the portions necessary, to perfect his bills of exceptions. We remanded the case so that the procedure outlined in the cited statute should be followed. Nothing whatsoever was said in the opinion as to how the bills of exceptions should be prepared or by whom, whether they should contain the evidence necessary for us to resolve the errors complained of, or whose duty it is to have the proper evidence included in the bill.[3]

[20] Defense counsel also directs our attention to the fact that at the top of the pages on which the various bills of exceptions appear in the record, there is a number which refers to the pages of the transcript of the testimony (which is physically in the record) where the evidence necessary for a consideration of the bill can be found. And he argues that this amounts

to an incorporation of such testimony into the bill.

We do not agree. The page number referred to, at the top of the page on which each bill of exceptions appears, is simply that placed there by the clerk for the convenience of this Court, in accordance with the requirements of our Rule I, Sec. 13. Besides, in this transcript none of them refers to page numbers where the evidence taken in connection with the bill is to be found, but only to the page where the bill of exceptions was noted. No mention whatsoever is made in the bills of exceptions themselves of the evidence which forms the basis for them.

We conclude, therefore, that we were correct in our original opinion when we stated that we could not consider the evidence merely placed physically in the record, because it had not been attached to or made a part of the formal bills of exceptions.

Bill of Exceptions No. 7 was reserved to the court's overruling of defendant's "Motion to Quash". It appears that prior to the filing of this motion the court, following a hearing, had overruled a motion to

3. Counsel also cites the case of State v. Lopez, 256 La. 108, 235 So.2d 394, as indicative of this Court's desire to relax its long standing procedural rule. That case was decided on certain circumstances peculiar to it which are not present here. Nothing that was said there was intended to overrule the estab-lished jurisprudence as recognized in the provisions of the new Code of Criminal Procedure heretofore cited in the opinion. Indeed, the rule was very recently stated and applied by this Court in State v. Callihan, 257 La. 298, 242 So.2d 521, wherein the accused was appealing from a conviction of manslaughter.

suppress certain evidence. The ruling was based on Article 225 of the Code of Criminal Procedure which authorizes an arresting officer to take from the person arrested all weapons and incriminating articles on his person. Thereafter, the defendant filed the "Motion to Quash" based on the alleged unconstitutionality of Article 225.

On the original hearing in this Court we held that "A motion to quash the indictment is not a proper remedy for an unconstitutional search and seizure," and that "The motion to suppress is, of course, the proper vehicle to raise the unconstitutionality of the search and seizure."

In his brief filed here in connection with his application for rehearing (Bill of Exceptions No. 7 is not argued in the brief submitted on the rehearing) the accused argues that:

" * * * At the time of the filing of the Motion to Quash, the Motion to Suppress had already been disposed of by the Court. It would have been vain and futile to file another Motion to Suppress. In addition thereto, Article 531 of the Louisiana Code of Criminal Procedure provides as follows:

" 'All pleas or defenses raised before trial, other than mental and capacity to proceed, or pleas of "not guilty" and of "not guilty and not

guilty by reason of insanity" shall be urged by a Motion to Quash.' "

"This is the only procedural device that the new Louisiana Code of Criminal Procedure provides in order to attack the constitutionality of a statute."

Counsel is mistaken as to his appreciation of the function of Article 531. That article relates to the quashing *of the indictment* and the "pleas" referred to therein are those which involve matters which, if valid, would defeat the prosecution, such as former jeopardy, prescription, etc. Prior to the enactment of the code each of these defenses was raised by a special plea. Now all can be raised in one pleading referred to as the Motion to Quash and, if they are sound, they (or any one of them) will result in *quashing the indictment or information*. The motion is in no way intended to be used as a vehicle for suppressing evidence. Thus the "Official Revision Comments" contains the pertinent observation that "Motions which do not constitute 'pleas or defenses' are governed by other Titles of this Code. Examples of such other motions are motions for a bill of particulars, for change of venue, for a continuance, or for recusation of the trial judge." And we might add—a motion to suppress evidence. In such a motion the accused could have raised the constitutionality of Article 225 under the authority of which the officers conducted their search of defendant's person following his arrest.

In any event, we find no merit in the attack on the constitutionality of Article 225. In the motion appellant asserts that the article "exceeds the scope of a permissible search and seizure allowed by both Constitutions, as interpreted by recent Court decisions, especially Sibron v. New York, 392 U.S. 40 [88 S.Ct. 1889], 20 L.Ed.2d 917." We find no cases which have held such statutes invalid, per se. The right of arresting officers to search the arrestee and seize evidence of crime found in his possession has always been recognized. The test as to whether the constitutional provisions referred to have been violated is whether the search *is a reasonable one, under the circumstances*. This, of course, depends on the facts of each particular case, but has no bearing on the validity of a statute authorizing a search and seizure such as this one. The courts have even permitted searches and seizures without an arrest (see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889) where it was determined that the officer had reasonable cause to have interfered with the arrestee's personal security and that the search and seizure was not unreasonable under the circumstances.

In Sibron v. New York, supra, the constitutionality of a "stop and frisk" law was at issue. The court observed:

"The parties on both sides of these two cases have urged that the principal issue before us is the constitutionality of § 180–a 'on its face.' We decline, however, to be drawn into what we view as the abstract and unproductive exercise of laying the extraordinarily elastic categories of § 180–a next to the categories of the Fourth Amendment in an effort to determine whether the two are in some sense compatible. The constitutional validity of a warrantless search is pre-eminently the sort of question which can only be decided in the concrete factual context of the individual case."

Accordingly, the court declared that it would not pronounce judgment on the words of the statute but would "confine [its] review instead to the [un]reasonableness of the searches and seizures which underlie these two convictions."

For the foregoing reasons, our original opinion and decree, affirming the conviction and sentence, are reinstated as the final judgment of this Court.

TATE, Justice (dissenting).

I respectfully dissent. This conviction, and especially the judicial review of it, offends fundamental notions of fairness. The majority avoids facing the substantial contentions that may justify a reversal, through applying outmoded technicalities.

The defendant, Kevin Barnes, is convicted of the possession of minute traces [1] of marijuana. He was sentenced to five years in the penitentiary. He was 17 years of age at the time of conviction.

The infinitesimal traces of the drug were in the seam of a small envelope in the bottom of a pocket of some bluejean pants this teenager was wearing when arrested. He had spent the night with eleven other teenagers in a house rented by one of them, another college boy. There is no showing whatsoever in the evidence (a) that the bluejean pants belonged to young Barnes, (b) that this boy knew of the small envelope in the bottom of one of the four pockets in these bluejean pants, (c) that this boy knew that there were any minute traces of a substance (analyzable only by microscope [2] in the laboratory) were in the bottom of the envelope, nor (d) that this boy knew any such minute traces in the envelope were marijuana. Nor was there any evidence from which this knowledge could be inferred as proved beyond a reasonable doubt.

## I.

The principal alleged errors involve (a) the failure of the prosecution to introduce any evidence of "guilty knowledge" and (b) the failure of the trial court, despite objection, to charge the jury that guilty knowledge was required for conviction. Additionally, (c) it is strongly contended that the small envelope of marijuana was illegally and unconstitutionally seized and should not have been admitted in evidence.

For one technicality or another, *this court does not pass upon any of these contentions*. In each instance, an objection was made properly in the trial court,

---

1. The State's chemist estimated the total quantity to be five milligrams. A milligram is one-thousandth of a gram and equals 0.015 grains in U.S. measure. A grain is equal to 0.002285 ounces. See Webster's Third New International Dictionary (unabridged) (1961), pp. 1399 ("measures and weights") and 1424 ("metric system"). As I calculate this, the sum total of this teenager's possession consisted of 0.000171375 ounces.

2. The State technician who identified the substance as marijuana admitted that he could do so only because of the microscopic similarity of the traces to the characteristics of marijuana. He was unable to conduct any other tests because of the minuteness of the quantity available. An

arresting officer estimated that there were 2–3 grains, Tr. 223, or a few particles, Tr. 237, in the lining of the bottom of the small folded envelope.

In several states, the "possession" required by Section 2 of the Uniform Narcotic Drug Act, La.R.S.: 40:962 (1951) in this State, has been interpreted to exclude minute portions of a substance of a drug not sufficient for illegal use, such as here. See Annotation, Narcotic—Possession—What Constitutes, 91 A.L.R.2d 810. Section 7 (1963). In these states the quantity here—even if it had been proved that the defendant *knowingly* possessed it—would not support a conviction of possession in violation of law.

the bill of exception clearly urged the contention, and the entire transcript is available to us for review, with the bill of exception indicating where in the transcript the evidence may be found.

It is in my view indefensible for an appellate court to avoid its function of review through the application of such court created technicalities—for it thus artificially to limit its own review of substantial contentions. In my view, an injustice has resulted here through the application of technicalities preventing consideration of substantial contentions. This I will attempt to show by more detailed discussion below.

## II.

The Louisiana jurisprudence has firmly established the principle that guilty knowledge is an essential ingredient of the crime of possession of narcotic drugs, i. e., the knowing and intentional possession of a drug, knowingly subjecting the possessor to criminal liability. State v. Kreller, 255 La. 982, 233 So.2d 906 (1970), and many decisions cited therein, syllabus 1; Notes, 18 La.L.Rev. 340 (1958) and 17 La.L.Rev. 229 (1956). See also State v. Birdsell, 232 La. 725, 95 So.2d 290 (1957). So has every other jurisdiction similarly adopting the Uniform Narcotic Drug Act. Annotation, Narcotic—Possession—What Constitutes, 91 A.L.R.2d 810 (1963).

It is conceded that the jury must be instructed that, for conviction, there must be proof not only of possession, but also of guilty knowledge, beyond a reasonable doubt.

The defendant twice attempted to have the jury charged that guilty knowledge must be proved beyond a reasonable doubt, as well as possession. He presented a special charge to that effect, objecting and reserving a bill of exception when the court declined to do so. Tr. 263. *Also,* however, the defendant objected because the *general* charge did not refer to guilty knowledge as being an essential element of the crime, reserving a bill when that objection was overruled. Tr. 264.[3]

In perfecting his formal bill of exception on this issue, Bill of Exception No. 17, Tr. 78, the defendant alleges that he "requested the court to charge the jury to the effect that 'guilty knowledge' is an essential element of the crime of possession of marijuana." Bill of Exception No. 17 contains the notation "See transcript page no. 264." In my view, this sufficiently includes for review, the objection and the surround-

---

3. Mr. Ryan: "I would have to object to the charge of the jury on the grounds that it does not make a reference to the guilty knowledge as being an essential element of the crime of possession of narcotics."

The Court: "Let that objection be overruled."

Mr. Ryan: "And I reserve a bill of exception to the ruling of the Court."

ing transcript contents thereto referred to: specifically, the failure of the general charge of the court, or of any charge, to refer to guilty knowledge. (At Tr. 264, it is well to note, the charge of the court commences.)

At least three judges of this court have expressed the view that this objection is well founded—that the general charge might reasonably indicate to the jury that mere possession of marijuana constituted commission of the felony. That is, the jury might have believed the only intent required for conviction was intent to possess the envelope in which the substance was contained, whether or not the possessor knew that the gleanings in the envelope were marijuana, for the possession of which he was punishable by years in the penitentiary.[4]

Further, in our original opinion, the majority expressed some concern as to whether the general charge *did* fairly instruct the jury as to the guilty knowledge required to

be proved; but, after considering the entire charge, the majority concluded that it could be so interpreted. *However, we must note, all seven judges considered the general charge as being before this court for review.* We granted rehearing primarily because of our doubt as to the correctness of the holding that the general charge fairly informed the jury of the guilty-knowledge requirement.

The majority on rehearing, for the first time, interprets the bill of exception as not bringing the general charge before this court for review.

When this court itself is so sharply divided as to whether the general charge fairly informed the jury that guilty knowledge was a prerequisite to conviction (despite the defendant's repeated efforts to have the charge corrected to do so), can we really feel that laymen on the jury would deduce from the technical legal definitions of the charge that such *guilty-knowing* possession must be proved beyond a reasonable doubt?

---

4. The Uniform Narcotic Drug Act and its stringent penalties for possession of marijuana, La.R.S. 40:981 (as amended through 1963), has since been replaced by the Uniform Controlled Dangerous Substances Law, Act 457 of 1970, La. R.S. 40:961 through 40:990 (1970). Under this new Act, a first offender such as the present could not be punished by imprisonment longer than one year in the parish jail, La.R.S. 40:971(d) (1), with the further provision that a conditional discharge on probation can be entered without adjudication of guilt, La.R.S.

40:977.1. The present young boy has already been in the parish jail, unbonded, since August 18, 1969, well more than the maximum sentence that could be imposed under the new law. However, the new statute specifically provides that prosecutions under prior laws shall not be abated by the new enactment, La.R.S. 40:987, although sentences after its enactment, for violations under the former laws, shall not exceed the maximum provided by the new statute, Act 457, Section 4.

When this court has differed so broadly in determining just what was brought up before us for review (with all seven judges at one time believing the entire general charge was available for the determination of the merits of the bill of exception), can we honestly conclude that this conscientious, diligent, and able counsel for this indigent boy really failed to do all necessary to bring the general charge before us for review?

If the judges of this court can differ so widely in their interpretation of the contents of the bills and of the criminal procedure statutes, should not we wonder whether or not our procedural rules in this regard fairly inform the accused of what he needs to do in order to assure at least *consideration* on the merits of errors urged? Do not such extremely technical interpretations raise questions of due process, as resulting in unknowing waivers of consti-

tutional rights and of substantive defenses (cf., Henry v. Mississippi, 379 U.S. 443, 1965, 85 S.Ct. 564, 13 L.Ed.2d 408)?

### III.

Without more showing of intentional and *knowing* possession of the prohibited drug [5], or without showing that the possessor should reasonably have known in the ordinary course of human experience of his illegal possession, La. R.S. 14:10 [6], a conviction should be reversed, assuming the ground was suitably preserved for review.[7]

Although the defendant clearly attempted to raise this ground for reversal, when he moved for a directed verdict at the close of the prosecution's case (Bill of Exception No. 16), we fail to pass upon this contention at all in the present majority opinion. In our original majority opinion, we likewise failed to pass upon this contention because "no evidence is made part of the Bill."[8]

5. Such as evidence of use on prior occasions. See State v. Kreller, 255 La. 982, 233 So.2d 906. 1970. We can be sure there was none affecting young Barnes, since none was introduced, as is usual in narcotics-possession prosecutions.

6. A basis, perhaps, might have been furnished by any evidence that young Barnes even *owned* the pants he was wearing, in which the envelope was found to which the gleanings of marijuana adhered.

7. See, e. g.: State v. Chavis, 270 N.C. 306, 154 S.E.2d 340 (1967) (Evidence insufficient to support conviction when uncertain, inter alia, whether the defendant knew marijuana was in the hat he had

been wearing); People v. Faulkner, 83 Ill.App.2d 54, 226 N.E.2d 467 (1967) (Narcotics found in the pocket of pants in the defendant's apartment not proved to be in his possession, in absence of proof that he owned the pants).

8. We also cited State v. Hudson, 253 La. 992, 221 So.2d 484, 1969, which held our own Code of Criminal Procedure Article 778 unconstitutional insofar as providing for directed verdicts. The affirmance in this case is not yet final, since an application for certiorari is still pending before the United States Supreme Court. 39 Law Week 3006, 39 Law Week 3017, Docket No. 48, United States Supreme Court 1971 docket.

The formal Bill of Exception No. 16, Tr. 75, urges as error that: "the defendant moved for a directed verdict in his favor on the grounds that the State has failed to prove the existence of any guilty knowledge on the part of the defendant in his alleged possession of the marijuana. The court denied the motion, and the defendant reserved this bill of exception to the ruling of the court."

At the top of this bill is found the notation "See Transcript Page Number 255".

At transcript page 255 is found the following:

Mr. Brown: The State rests.

Mr. Ryan: Your Honor at this time I move for a directed verdict of not guilty to be given to the jury when they return for the reason that the State has failed to prove the elements of guilty knowledge which is an essential ingredient of the crime of the possession of a narcotic drug.

By the Clerk: The motion for a directed verdict taken up and argued.

The Court: Let the defendant's motion for a directed verdict be overruled.

Mr. Ryan: To the ruling of the Court I reserve bill of exception number 16.

The Court: Let the bill be reserved *and all testimony attached thereto.*

La.C.Cr.P. Art. 843 provides that, "When a bill of exception is reserved, the clerk or the court stenographer shall immediately take down the objection, the ruling, and the facts upon which this objection is based. The matters, so taken down, * * * *shall constitute the bill of exceptions,* and shall be a basis for a formal bill of exceptions."

Here, of course, everything was transcribed, as is the modern practice in most districts of this state now. (Perhaps as short as ten years ago, many districts just called in the court stenographer to take down objected-to portions of the testimony.)

La.C.Cr.P. Art. 844 provides that "A formal bill of exceptions shall contain *only* the evidence necessary to form a basis for the bill * * * *."

To me, this statutory language does not command that the defendant and court reporter must *again* transcribe the testimony objected and the surrounding circumstances, whenever the modern practice of transcribing all the testimony is followed, as here. It simply means that, in the days and in areas where the free services of the criminal court reporter were or are not readily available, the only transcription *required* is of the objected-to testimony.[9]

9. La.R.S. 13:961, the general statute regulating court reporters, provides: "No fee shall be charged for taking evidence on bills of exception, motions, or other pleadings in criminal cases. All copies required to perfect appeals shall be fur-

In any event, however technically the statutory requirement of Article 844 is read, it seems to me that the present formal bill of exception noting "See transcript page 255", should be regarded as incorporating the actual bill of exceptions taken, see Article 843, which includes not only the objection, the ruling, and the reservation of bill of exceptions, but also "all testimony", pursuant to the trial judge's order. La.C.Cr.P. Art. 843, quoted above.

If we once look at the entire testimony produced by the State, then we see that the motion for directed verdict should have been sustained, since the State did not produce any evidence at all to prove guilty knowledge.[10]

### IV.

The other substantial contention of error involves the alleged unconstitutional and illegal search of young Barnes's person and the seizure of the small folded envelope containing infinitesimal traces of mari-

juana. It is conceded that, if this contention is upheld, the conviction should be reversed, since this is the only evidence whatsoever against this boy.

A hearing was held on the motion to suppress this evidence. When the motion was denied, the defendant reserved his bill of exception to this ruling. His formal bill (No. 6) to this ruling notes that the bill was reserved to ruling of the court overruling the motion to suppress evidence.[11]

The present majority opinion does not discuss this bill. The original majority opinion refused to look at the evidence educed at the hearing on the motion to suppress. The reason was that this evidence was not attached to the formal bill of exception raising this error.

For the reasons previously noted, I believe we are in error in not considering this evidence. It is contained fully in the transcript; both the evidence involved and the ruling complained of are easily ascertainable from the record and the actual

nished at no additional cost." The requirement of Article 844 that "only" the evidence necessary for the bill shall be contained therein should be read in the light of this traditional requirement.

10. Although in the non-final decision of State v. Hudson, 253 La. 992, 221 So.2d 484 (1969), see footnote 8 above, a majority held Article 778 of our Code of Criminal Procedure unconstitutional insofar as providing for a directed verdict, it seems to me that this recent holding is erroneous and was not necessary under the pleadings of the case, so that upon

reconsideration a majority of this court will hold otherwise.

11. Additionally, he objected to introduction of the evidence at the trial as unconstitutionally seized, Bill of Exception No. 14, and out of precaution also raised this objection by a motion to quash the indictment, alleging that if the seizure is sought to be justified under La.Code Crim.P. Art. 225, such code article is unconstitutional. I do not discuss this contention, because I find the search and seizure invalid on other grounds.

bill of exception when reserved in the record.

In the present instance, young Barnes had spent the night at a house where about ten other teenagers had gathered. The law enforcement officers suspected a "pot party" was in progress. About noon, Barnes had left the house in a white Dodge, and the officer tailing him had allegedly tried to tail his vehicle but lost sight of it due to its excessive speed.

When Barnes returned three hours later, he was arrested. It is important to note that the only claim of right to arrest him was because of his speeding some three hours earlier, and his driving then without a driver's license. (The great weight of the evidence shows that, on the return, Barnes' companion was driving.)

The police officers themselves so testified. Other excuses now alleged for the arrest are afterthoughts.

The arrest without a warrant for these earlier traffic violations was illegal. La. Code Crim.P. Art. 213. The search of the boy's person, again *after* the officers had previously patted down and assured themselves that this 125-pound boy was not armed, was illegal for lack of probable cause, cf. State v. Lawson, 256 La. 471, 236 So.2d 804 (1970), and it rather plainly violated federal Fourth Amendment guarantees against illegal searches of the person. Sibron v. New York, 392 U.S. 40, 88 S.Ct.

1889, 20 L.Ed.2d 917 (1968); Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968).

V.

I should, finally, note the futility of avoiding judicial review of substantial claims through the application of extremely technical policies. In the first place, since the defendant had not had *any* of his substantial contentions reviewed on the merits, the majority's opinion is not such a consideration of them as will bar post-conviction relief.

In the second place, insofar as young Barnes alleges (correctly in my opinion) that his rights under the federal constitution have been denied him, neither the United States Supreme Court on direct review, Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965), nor the lower federal courts on collateral review, are bound by our application of a narrow state policy, which serves no legitimate state aim but, instead, amounts to imposing on a defendant an involuntary waiver of rights guaranteed to him by our state and federal constitutions.

If the defendant had been afforded his day in this appellate court—if his substantial contentions had been reviewed on their merits—, and if indeed *on the merits* a majority had concluded that an affirmance was required, then perhaps I would not have felt obliged to write so strongly and

at this length of my difference of view from my esteemed and sincere colleagues.

However, the majority has utilized technicalities to avoid considering the defendant's contentions on their merits. For that reason alone, I must strongly dissent from our affirmance of the sentence of this 17-year-old boy to five years in the penitentiary, aside from my personal conviction based on study of the record and the law that an injustice has resulted.

DIXON, Justice (dissenting).

In former times evidence was not ·aken down in a criminal trial. When a defense objection was overruled, the defendant then reserved a bill, the trial stopped, a reporter was called, and the evidence surrounding the bill was taken down. Under such circumstances, the rule became well established that the evidence surrounding the objection and the bill be included in the formal bill of exception. If the evidence was not there, within the bill, it was not in the record, supposedly. As time passed and the evidence began to appear in the record on appeal as a transcript of the entire testimony, the rule nevertheless received continued enforcement.

After the intervention of the federal courts in post conviction remedy cases, the transcript of testimony became essential. (See Comment (d) Article 844, Code of Criminal Procedure).

The statutory basis for including the evidence in the bill as a prerequisite for appellate review of the bill is now Article 844, subd. B, Code of Criminal Procedure:

"A formal bill of exceptions shall contain only the evidence necessary to form a basis for the bill, and must show the circumstances and the evidence upon which the ruling was based. When the same evidence has been made part of another bill of exceptions, the evidence may be incorporated by reference to the other bill. Evidence as to guilt or innocence can only be taken down and transcribed as provided by law."

We need not interpret the first clause in 844, subd. B, C.C.P. as requiring the inclusion of *all* the evidence necessary to form the basis for the bill. This clause seems to fix a *maximum* for the evidence included in the bill; otherwise, the second clause, which does fix a minimum standard, would be redundant.

The source article was 500 C.C.P. (1928):

"The bill of exceptions must show the circumstances under which and the evidence upon which the ruling complained of is based; and the accused is without right to have taken down any evidence except that which is necessary as a basis for his bill; he can not require that any evidence be taken down that appertains to guilt or innocence."

The source article, it is true, states that "the bill of exceptions must show the circumstances under which and the evidence upon which the ruling complained of is based; * * *." The current article also requires that the bill "must show the circumstances and the evidence upon which the ruling was based." There is, however, more than one way to "show the evidence." The circumstances and the evidence surrounding each bill of exceptions are clearly shown in the record before us.

The record before us consists of two volumes of legal sized pages. Because of Rule I of this court, the first volume contains only 250 pages. The second volume contains pages 251 through 274. Bill of Exceptions No. 17 is on page 78. It is not considered by this court for the reason that the general charge to the jury is not made a part of the bill of exceptions. According to the index, the judge's charge to the jury appears on page 33. The charge *is* on page [33], continues to its completion on page 37 and appears again at pages 264–271. The requested charges of the defendant appear on page 31, and are properly indexed.

Bills numbered 14 and 16 this court refuses to consider because the bills do not show the evidence on which they are based. Each bill bears a heading, pursuant to the rules of this court (Rule I, Section 13), which refers to a transcript page number. Bill No. 14 refers, in its heading, to transcript page number 231. The bill was reserved to the introduction of State Exhibit No. 1. Page 231 of the transcript shows the reservation of the bill of exceptions; immediately preceding the reservation of the bill is the testimony surrounding the introduction of State Exhibit No. 1. As long as Bill 14 is in the record, a judge cannot hold it in his hand without holding all the testimony surrounding it. The exhibit itself is before us.

Bill No. 6 was reserved to the overruling of a motion to suppress evidence. According to the index, the note of evidence taken on the motion to suppress begins at page 81. The index is correct.

When the record indicates that a conviction should be affirmed, this court has not, to my knowledge, limited its inquiry to the evidence included in the bill. If the record is before us, and other evidence, not included in the bill, refutes the defense objection, we do not, and should not, hesitate to base our ruling on that other evidence. We only restrict our inquiry on appeal to evidence relied on by the appellant; our inquiry on behalf of the appellee is unrestricted.

There is no longer any utility in the perpetuation of the rule that the formal bill of exceptions must contain within it the evidence surrounding the ruling complained of. The record before us is complete. It is correctly and efficiently in-

dexed. The only utility of the rstrictive rule is to trap the unwary civil lawyer unaccustomed to the perfection of appeals in criminal cases. The rule, in my opinion, is antiquated and outmoded, serving no useful purpose today. I find no reasonable relationship between the rule and its stated objective. I cannot subscribe to it. The rule should be changed to insure for the defendant a fair chance that his points on appeal will be reviewed.

On the merits of the appeal, I subscribe to the views expressed by Justice TATE.

· BARHAM, Justice (dissenting).

Almost one year ago we granted a special fixing in this case in order to dispose of the appeal of a young man who had been convicted of possession of marijuana in violation of R.S. 40:962. In our first opinion, handed down on June 29, 1970, the majority of this court as then constituted affirmed his conviction. I alone dissented. We had before us at that time a full transcript of all proceedings below, including the evidence taken on the preliminary hearings and on the trial of the case and the charge given to the jury. Throughout that opinion the majority after reference to the per curiams of the trial court rejected many of the bills of exception, saying that the evidence had not been made part of the bills. However, most of the bills of exception referred to page numbers in the transcript.

These page numbers directed this court to the testimony and evidence which was pertinent to those bills of exception. It cannot be said that this court could not have, with facility, properly reviewed the bills including the evidence in the transcript, for we reviewed 105 bills of exception in State v. Square, 257 La. 743, 244 So. 2d 200, decided January 18, 1971, where the record was prepared in an almost identical manner.

Moreover, this court on that first hearing, including this dissenter, in reviewing Bill of Exception No. 17 did not restrict itself to the per curiam to that bill but examined the general charge to which the complaint was directed. Bill of Exception No. 17 was reserved when the trial judge refused the following requested special charge: "Guilty knowledge is an essential ingredient of the crime of possession of narcotic drug." The majority found that the general charge, which it then considered to be before it, covered this special requested charge. I dissented, pointing out that the special charge was a correct statement of the law and was not included in the general charge, and that therefore an essential ingredient of the crime proposed to be charged was not in fact made a part of the instructions to the jury. The majority of the court voted for a rehearing on the basis of this dissent.

Unfortunately, the defendant remained in jail for many months before the application for rehearing was considered and granted. Unfortunately, he still languishes in jail after the case has been lodged with us for almost a year. Even more unfortunately, the majority of the court have now refused to examine the general charge to the jury (formerly considered) to determine whether the defendant was convicted under an instruction which included all of the necessary ingredients of the crime. All members of this court without question looked at that charge on first hearing, apparently with the belief that such an examination was required of the court under our law. Now, after many months of delay, the majority have decided that the charge should never have been examined in the first place. On this technicality they affirm the conviction of a man under a charge of law which required a jury to convict even if an essential ingredient of the crime (guilty knowledge) had not been established. Not only has the court erred, but I believe that the court has committed a grave injustice and has reached a most inequitable result. Not decisive of the issue but at least persuasive is the fact that this young man has now been incarcerated for a period longer than the sentence which could be imposed under the new law concerning this offense adopted at the 1970 legislature.

I repeat: This court, having on first hearing passed upon the merits of a bill of exception which the entire membership of the court considered to be before it, should not now on rehearing refuse to examine that bill. The long delay involved in this case and the grave injustice which results from the combination of circumstances were not deliberate action on the part of this court. Nevertheless, these constitute a miscarriage of justice which we could and should correct. Considering the action of the majority in this regard so erroneous and grievously inequitable, I pretermit a discussion of other possible error. I dissent.