In view of the fact that there are no perfected bills of exceptions there is

nothing for us to review except errors "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." Art. 920 C.Cr.P. Our examination of the record reveals no such errors.

For the reasons assigned, the conviction and sentence are affirmed.

260 So.2d 682

**STATE of Louisiana**

v.

**Joseph J. MIGLIORE.**

**No. 51939.**

March 27, 1972.

Rehearing Denied May 1, 1972.

Frank J. Uddo, New Orleans, for defendant-relator.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-respondent.

HAMLIN, Justice:

In the exercise of our supervisory jurisdiction, Art. VII, Sec. 10, La.Const. of 1921, we granted defendant's application for Certiorari, December 2, 1971.

By a two count bill of information Joseph J. Migliore was charged (1) with willfully and unlawfully having in his possession a controlled dangerous substance, to-wit, Cocaine, on August 12, 1971, and (2) willfully and unlawfully having in his possession a controlled dangerous substance, to-wit, LSD, on August 12, 1971.

Defendant pleaded not guilty and filed among his special pleadings a Motion for Independent Examination of Evidence which recited:

"Defendant, JOSEPH MIGLIORE, through his undersigned counsel, moves the Court to allow the defense to conduct an independent examination of the alleged narcotic substances which the defendant is charged with the possession of in the

above captioned case. That in order for a proper defense to be prepared, defense counsel finds it necessary that an independent examination conducted by an independent testing laboratory be made on the substances presently in the possession of the New Orleans Police Department, Narcotics Division of the New Orleans District Attorney's Office."

A hearing was held by the trial court on the above motion on September 24, 1971, and at its conclusion, the motion was denied, the denial being based on certain enumerated jurisprudence. The trial court stated:

"You interpret the Fifth Circuit Court one way and I another as to what they say in the matter. I deny defense counsel's Motion for Independent Examination of Evidence prior to the trial, based on State v. Clack, 254 La. 61, 222 So.2d 857; State v. Hunter, 250 La. 295, 195 So.2d 273; and State v. Pailet, 246 La. 483, 165 So.2d 294, all three cases basically holding that all evidence relating to impending criminal cases should not be subject to inspection by the accused unless and until it is offered in evidence at the time of the trial of the matter. Also, in my Judgment is cited Clack v. Reid, U.S.Ct.App., 441 F.2d 801."

Counsel for the defendant reserved a bill of exceptions, and thereafter applied to this Court for writs.

As stated supra, this Court granted Certiorari on December 2, 1971 and ordered that the matter be heard on February 25, 1972. On December 13, 1971, the State of Louisiana, through the Assistant District Attorney for the Parish of Orleans, filed a motion in this Court for Permission to Take Evidence; it was granted on the same day and recited as follows:

"Now into Court comes the State of Louisiana, through the undersigned Assistant District Attorney for the Parish of Orleans, and respectfully requests that the State be allowed to adduce evidence in the district court in the above-captioned matter, contradictorily with the accused, concerning the practical aspects of allowing the accused an independent pre-trial examination of narcotic evidence, which question will be heard in this Honorable Court on February 25, 1972.

"The State would have adduced such evidence at the hearing of the Motion For Independent Examination of Evidence, which was heard in the trial court on September 24, 1971, if the State had thought that this Court would order the matter up for hearing, but as under the existing jurisprudence of this Court such a pre-trial examination is not permitted, the State did not think it would serve any purpose to put on such evidence at that time.

"The purpose of putting on evidence in the trial court concerning the practical aspects of the question here at issue is so that this evidence can be made a part of the record in the case in this Court, thus enabling this Court to consider both the legal and the practical aspects of the issue in reaching its decision as to whether to allow such a pre-trial examination of narcotic evidence or not, and to set up proper procedural safeguards should such an examination be permitted.

" *   *   * "

A hearing was held in the trial court on January 3, 1972; the evidence adduced is a part of the instant record.

The matter was argued in this Court on February 25, 1972, as ordered, on the following three errors assigned to the ruling of the trial court which denied defendant's motion for Independent Examination of Evidence:

"1) Defendant should be able to examine narcotic substances held by the District Attorney as evidence, especially where the possession of the substance, in and of itself constitutes the basis of the charge. If the substance purported to be contraband is in actuality another substance, not contraband, then the defendant is being charged in complete contravention of his constitutional rights.

"2) The court misinterpreted the ruling of Clack v. Reid, U. S. Fifth Circuit Court of Appeals, 441 F.2d 801. The District Court, in its opinion did not refuse to look to this case as precedent, however, did interpret the holding to pertain only to examination of narcotic evidence at the time of trial. The mere fact that the United States Fifth Circuit Court of Appeals looked to the case of Jackson v. State, Miss., 243 So.2d 396, it is unquestionable that pre-trial examination was the consideration of the court in said decision.

"3) The court based its decision on the case of State v. Hunter, 250 La. 295, 195 So.2d 273, (1967) and State v. Pailet, 246 La. 483, 165 So.2d 294, (1964), which cases are completely distinct and unrelated to the present case. That the court should have recognized the contrast in factual and legal situations between the present case and the above quoted cases."

In substance, the State argued in this Court the following contentions which are submitted in its brief:

"The State respectfully suggests to this Court that only broad rules of discovery which cover all criminal cases should be adopted, if at all, in Louisiana, and that there is no valid reason to allow this procedure in narcotics cases alone.

"Alternatively, the State suggests that if this Court should decide to permit to

the accused in the instant case an independent pre-trial examination of the drug, that the accused in this event should be required, before receiving any of the drug, to qualify his expert chemist before the trial court contradictorily with the State; and if the accused's expert is accepted by the trial judge, the drug sample should be delivered at this time to the expert by Major Koch or one of his subordinates in open court, so that the minutes can reflect this act, and a special incision in the evidence envelope can at this time be made and noted for this purpose, thus preserving the State's chain of evidence and assuring that the independent examination of the evidence will be made by a well qualified person of good character.

"Moreover the accused's expert chemist should at this time be ordered by the judge to report his scientific findings concerning the drug in writing to the trial court and to the State within a few weeks time, or at any rate well in advance of trial."

The evidence adduced at the January 3, 1972 hearing disclosed that at the present time the State would encounter problems if it permitted independent examination of evidence such as dangerous substances. Major John Koch, Director of the Crime Lab for the New Orleans Police Department, answered the question, "State to the Court the problems which would inure to your Crime Laboratory in giving the defense attorney or his expert the narcotic evidence before trial for his own examination," as follows: "There would be some problems that would be encountered. First, we receive the evidence in a sealed envelope and in order for us to make an analysis we let the seal remain intact, secure the evidence, make the analysis, identify it and place it back in the envelope, put a gum tape paper seal over the tape and initial across the seal. If we are required to break the seal then the chain of evidence would be very hard to establish. If the Supreme Court decides this would be practical, and this is not a serious problem, then I think guidelines would have to be set as to who would be present so that when we come into court we can explain why the original seal, which was put on the evidence, was broken and a new seal put on. There are certain situations I can see where there would not be sufficient amount of evidence to give to a defense attorney and I am speaking of residue cases." [1]

1. The following testimony was adduced from Major Koch later in the proceedings: (By Assistant District Attorney Wheeler)
"Q. In the examining of narcotics evidence a criminalist has to be qualified as an expert to testify. Are there times when certain tests can be run on a particular drug and aspects of that analysis be declared positive and also negative at the same time? Could one expert get on the

After the above statement was made by Major Koch, the following ensued in the trial court:

stand and say it is positive for a drug violation and the other expert, running a test, come up with a negative conclusion? Is that possible?

"A. This is possible even on the same material we analyze. In other words, tablets . . .

"Q. Is it probable?

"BY MR. UDDO:

"I object to that . . .

"WITNESS:

"Let me explain. This is possible, not in the commercially prepared tablets, proprietary compounds, but in the homemade, illicit drugs it is possible because we find the distribution of the compound within the tablet is not homogeneous and we may take a portion of the tablet and get a negative result and a portion of the tablet and get a positive result.

"Q. That is on the same tablet?

"A. Yes sir. They do not have a quality control project when they are making these illicit drugs. This is a possibility. This is also possible when we are dealing with bulk powder, this is where you sample from the powder."

With respect to inspection during trial, Major Koch gave the following testimony:

"WITNESS:

"This would be very difficult to arrange as I see it. No. 1: we find we have difficulty in other police matters in arranging defense counsel being present when certain police matters are conducted which require their presence; secondly, we would have to set up a schedule and an analytical determination, schedule our cases at the convenience of defense counsel and our people and the court because many times we are prepared in the morning to start an analysis on a case and we will receive a subpoena or call to come to court and we have to defer this to a

"BY THE COURT:

"Q. In this case, No. 222–886 State vs. Migliore, charged with having alleged later date, so making the necessary arrangements and getting all of the interested parties together would present some major problems in this respect.

"Q. Do you think it would be feasible during the trial if the accused has not been allowed an independent pretrial examination of the evidence, how practical would it be during the trial for the court to recess and the experts of the accused at that time run tests on the narcotics, where could it be done, how long would it take, etc., and is it feasible?

"A. This would be determined by the quantity, if it is not a residue case to turn over to defense counsel, it is feasible. Where it could be run I think would be a matter of choice of defense counsel. I can't give permission to do this, it would have to come from the Superintendent of Police, but I feel sure arrangements could be made in the Police Lab we have if it would be convenient. This would be a matter of preference.

"Q. How long a recess, in your opinion, would be required if defense counsel or their expert is present in court, how long a recess would have to be declared roughly for these tests to be run?

"A. I thing this would be largely determined by: No. 1, the number of tests that have to be run, and No. 2, the particular drugs involved in the case. * * *

"Q. The trial might have to be recessed until the following day?

"A. This is a possibility as to what time the Motion is put before the court."

The testimony of defendant's expert disclosed that independent chemists would be capable of examining and analyzing dangerous substances evidence. The testimony, however, neither solved the problems presented by the State's witness nor contradicted his testimony.

possession of cocaine and LSD, would there be any problems with these two type drugs in this area in relationship to the District Attorney's question? With the type of narcotics involved in this case?

"A. Are you referring to the quantity?

"A. No, the type of drugs, as these two types of drugs.

"BY MR. UDDO:

"I object to the question because we are concerned here with all drugs rather than the specific drugs in this case, the Supreme Court did not say from the standpoint of any specific drugs, I think if we are going to treat this question we have to treat it objectively for all drugs.

"BY THE COURT:

"I will put in this record whether or not there are any particular problems with the types of drugs of cocaine and LSD. If you want to expound on the entire drug field you may, but the types of allegedly drugs involved in this case are cocaine and LSD, and I want to know if there are any problems involved with these types of drugs."

Counsel for the defendant objected to the trial judge's ruling and reserved a bill of exceptions when the objection was overruled. The court then adduced from Major Koch the following testimony:

"BY THE COURT:

"The drugs involved in this case, are there any major problems, or are there any problems in the analysis if given to a defense attorney to examine. Or does it depend on the amount or quantity of the narcotic drug involved?

"A. The quantity we have as evidence is an important factor, there is no question about that. Some drugs are easy to identify in small quantities and some are not. So the quantity would play an important factor.

"Q. Does quantity play an important factor in cocaine and LSD, the drugs allegedly charged in this case?

"A. In cocaine no; in LSD the quantity would be an important factor because LSD is usually in microgram quantities."

For reasons stated infra, we are going to restrict this matter to its own peculiar facts and circumstances; we are also going to restrict our order to the defendant and his motion for Independent Examination of Evidence—Cocaine and LSD. Therefore, we find no error in the trial judge's ruling supra, as to the types of alleged drugs in this case.

In State v. Hunter (Murder), 250 La. 295, 195 So.2d 273 (1967), the State objected to furnishing extensive information requested by defendant, and after a hearing on pleadings, the trial judge ordered the State to furnish the following items: (1) the weap-

on allegedly used in the homicide for pre-trial inspection; (2) a copy of all written confessions or statements of the defendant; (3) the gist of all oral confessions or statements; (4) all photographs in the possession of the State for pre-trial inspection; (5) all clothing and physical evidence for pre-trial inspection; (6) correct information as to the location of the police station where defendant was booked and the exact date and time of his arrest; and (7) the correct names and addresses of the arresting and booking officers. After reserving bills of exceptions to the trial court's rulings, the State applied to this Court for Certiorari which was granted. We reversed and set aside the rulings of the trial court, remanding the matter for further proceedings.

In Hunter, we said that we were aware of the serious professional dialogue in progress on pre-trial discovery in criminal cases, but we noted that the Louisiana Code of Criminal Procedure enacted as Act No. 310 of 1966 did not embody pre-trial discovery in criminal cases. We held that " * * * no more can be demanded of criminal procedure than that it be carefully designed to free the innocent and convict the guilty by fair trial within our constitutional framework." 195 So.2d at 276.

In the body of our opinion in Hunter, we said:

"Louisiana was in the vanguard of the states in granting a. defendant the right to inspect his written confession before trial. See State v. Dorsey, supra [207 La. 928, 22 So.2d 273]; State v. Tune, 13 N.J. 203, 98 A.2d 881; and 74 Harv.L. Rev. 940, 1054. However, we have steadfastly refused to broaden this holding into full pre-trial discovery of the varied items of evidence in criminal cases. See State v. Johnson, 249 La. 950, 192 So.2d 135 (oral confession and statements of witnesses); State v. Dickson, 248 La. 500, 180 So.2d 403 (police motion picture of defendant in criminal act); State v. Pailet, 246 La. 483, 165 So.2d 294 (wiretap recordings); State v. Bickham, 239 La. 1094, 121 So.2d 207 (defendant's oral statements); State v. Lea, 228 La. 724, 84 So.2d 169 (oral confession); State v. Shourds, 224 La. 955, 71 So.2d 340 (documents); State v. Simpson, 216 La. 212, 43 So.2d 585 (evidence produced at grand jury hearing); State v. Vallery, 214 La. 495, 38 So.2d 148 (statement of prosecuting witness); and State v. Mattio, 212 La. 284, 31 So.2d 801 (police report)." 195 So.2d at pp. 275 and 276.

The Hunter rule supra was followed in the recent cases of State v. Fink, 255 La. 385, 231 So.2d 360; State v. Barnes, 257 La. 1017, 245 So.2d 159; State v. Coney, 258 La. 369, 246 So.2d 793; State v. Mitchell, 258 La. 427, 246 So.2d 814; State v. Cripps, 259 La. 403, 250 So.2d 382; and State v. Clack, 254 La. 61, 222 So.2d 857.

In State v. Barnes, supra, the defendant's application for a Bill of Particulars asked: (1) the identity of the various persons who had possessed the narcotic drug (defendant was charged with possession of marijuana) since it was seized from defendant; (2) whether the drug had been submitted to chemical analysis; (3) the results of such chemical analysis; and (4) the location of the narcotic drug at the present time. No request was made for an independent inspection of the marijuana.

In State v. Clack, supra, defense counsel contended that prior to trial defendant should have been allowed to examine a portion of the gleanings allegedly containing marijuana, in order to determine whether they contained any marijuana. Counsel contended that prior to trial defendant should have been allowed to have an expert of his own choosing examine the gleanings with a microscope, in order to ascertain if really there was any marijuana contained in them.

We answered defense counsel's contentions in Clack by stating: "Under the law of Louisiana and its established jurisprudence, the evidence—marijuana gleanings— was privileged. It is the settled law of this State that an accused in a criminal case is without right to a pre-trial inspection of the evidence upon which the prosecution relies for a conviction. State v. Hunter, 250 La. 295, 195 So.2d 273, and authorities cited therein. See, also, State v. Pailet, 246 La.

483, 165 So.2d 294, in which we held that 'all evidence relating to a pending criminal case which is in possession of the State is privileged and not subject to inspection by the accused unless and until it is offered in evidence at the trial. The single exception to this rule has been made in instances where the State has in its possession a written confession of the accused.' Cf. State v. Hall, 253 La. 425, 218 So.2d 320." 222 So.2d at p. 861. Cf. 30 La.L.Rev. pp. 328 and 329.

Clack was denied habeas corpus by the United States District Court for the Western District of Louisiana; he appealed to the United States Court of Appeals, Fifth Circuit. The appellate court affirmed the judgment of the District Court on all issues except that dealing with the pre-trial examination of the marijuana.

The Court of Appeals before making its ruling with respect to the marijuana stated:

"This leaves only this question: Did due process mandatorily require the granting of Clack's motion for an examination of a portion of the marijuana?

"Under ordinary circumstances the answer is left to the exercise of sound judicial discretion. See, e. g., Rule 16(b) Federal Rules of Criminal Procedure.

"We note, however, that a state court, the Supreme Court of Mississippi, has very recently considered and decided the issue in a marijuana case, Jackson v. State, 243 So.2d 396 (Miss., 1971). Jackson had

allegedly been apprehended in the possession of twelve match boxes of marijuana. His motion for a sample of sufficient size and quantity to enable an independent chemist to determine whether marijuana was present was denied by the trial court. The Mississippi Supreme Court reversed, * * *

"* * *

"There is, however, this additional difficulty with this case. The *habeas* proceedings were brought against the county sheriff before Clack was delivered to the penitentiary. The State of Louisiana, evidently, through inadvertence of some kind, was not notified of this appeal. It has filed no brief and did not appear for oral argument. An appropriate regard for the State in the prosecution of state cases requires that on the issue of pretrial examination of the alleged contraband the State should be given an opportunity to be heard.

"The judgment of the District Court, then, will be affirmed on all issues except that dealing with the pre-trial examination of the marijuana.

"As to that issue the judgment of the District Court is vacated and remanded for appropriate notice to the State and subsequent decision of the District Court." (Our research does not reveal what action has been taken by the District Court.)

In Jackson v. State of Mississippi, 243 So.2d 396 (1971), relied on by the United

States Court of Appeals, supra, the trial court denied defendant's motion for a sample of the alleged marijuana of sufficient size and quantity to enable an independent chemist employed by the defendant to determine whether marijuana was present. The Supreme Court of Mississippi reversed the ruling of the trial judge and stated:

"* * * There is no good reason why the defendant in a civil case should be entitled to more liberal right to tangible evidence in the possession of his adversary under the authority of section 1659, Mississippi Code 1942 Annotated (1956) than is a person under a serious criminal charge.

"The guilt or innocence, prison sentence or acquittal, of the defendant depends entirely upon the identification of the contents of the boxes as marijuana. This substance was relevant, material, competent and, in fact, necessary evidence to defendant's conviction. Under this circumstance we are of the opinion that due process of law requires, upon the court's attention being directed thereto by motion, that the analysis of the substance not be left totally within the province of the state chemist. The defendant having made proper and timely motion for a portion of the substance, it should have been made available to his attorney, as an officer of the court, and under such safeguards as the trial court deemed necessary, for inspection and analysis. We

hasten to add that this opinion is limited to the alleged possession or sale of a prohibited substance where the outcome of the case is dependent upon its identification as contraband. We conclude, therefore, that the lower court erred in not sustaining the defendant's motion for a portion of the seized substance." 243 So.2d at p. 398.

Federal Rule No. 16 of the Federal Rules of Criminal Procedure, effective July 1, 1966, provides that upon motion of the accused the court may order the attorney for the government to permit the accused to inspect and copy or photograph books, papers, documents, tangible objects, etc., upon a showing of materiality to the preparation of his defense and that the request is reasonable. Section (d) of the rule provides: *"Time, Place and Manner of Discovery and Inspection.* An order of the court granting relief under this rule shall specify the time, place and manner of making the discovery and inspection permitted and may prescribe such terms and conditions as are just."

Rule No. 16 was followed in the case of United States v. Mastrobuono, 271 F.Supp. 197 (1967); the government consented to an independent examination of evidence by allowing a qualified chemist to make an analysis of available samples of the LSD involved.

From the above, we see that there has been a tendency in the federal courts and in the Mississippi State Supreme Court to broaden discovery in dangerous substances cases by permitting an independent examination of evidence, but thus far, the United States Supreme Court has made no definite ruling.

At this time, we are not constrained to adjudicate generally—to the extent that prior jurisprudence would be overruled—on a matter which might be considered by the Legislature at a near future date. As noted supra, progressive study is being made; such study will undoubtedly be concluded soon, and its results will be in accord with the constitutional demands of due process.

■■ Even though as stated supra the Louisiana Code of Criminal Procedure does not allow formal pre-trial discovery in criminal cases, much discretion is vested in the trial judge with respect to bills of particulars and the furnishing of the evidence requested by the defendant. The instant ruling of the trial judge, supra, was motivated by the jurisprudence cited by him— Hunter, Pailet, and Clack. We find, however, in the instant case because of the sufficient amount of the evidence, as testified to by Major Koch, supra, defendant should be allowed to make an independent examination of evidence. The trial judge must set guidelines which he finds appropriate under the instant facts and circumstances.

We find no quarrel with the defendant's statement that his guilt or innocence de-

pends upon the identification of the substances in his possession as Cocaine and LSD. However, since we see fit to grant defendant's motion for an Independent Examination of Evidence, there is no necessity for us to discuss the constitutional issues submitted.

For the reasons assigned, the ruling of the trial court denying defendant's Motion for Independent Examination of Evidence is reversed and set aside. It is now ordered that this matter be remanded to the trial court for further proceedings in accordance with the views herein expressed; the trial court shall permit the Independent Examination of Evidence, specifying the time, place, and manner of making the examination permitted and prescribing such terms and conditions as are just.

Reversed and remanded.

BARHAM, J., concurs in the result.

McCALEB, C. J., and SUMMERS, J., dissent with written reasons.

McCALEB, Chief Justice (dissenting).

Our decision today, following a ruling of the Mississippi Supreme Court, creates an exception for pretrial discovery in narcotic cases and this overrules (partially at least) our many opinions denying discovery in criminal cases where we have held to the view aptly expressed in State v. Hunter, 250 La. 295, 195 So.2d 273 (1967), where,

in commenting on our prior jurisprudence we stated that the holdings of this Court have " * * * been dictated by vital considerations related to fair balance in criminal procedure and the protection of the public against the ravages of crime."

The rationale of the decision in Jackson v. State of Mississippi, 243 So.2d 396 (1971), that " * * * There is no good reason why the defendant in a civil case should be entitled to more liberal right to tangible evidence in the possession of his adversary * * * than is a person under a serious criminal charge," which the majority opinion approves, does not appeal to me. In my opinion, the comparison made by the Mississippi Court is inept because civil and criminal cases are not parallel procedure-wise. For discovery in criminal cases, unlike civil cases, is a one-way street favoring only the defendant who is brought to trial under every imaginable constitutional safeguard and is not required at any stage of the proceeding to come forward with any evidence, the burden being entirely on the State to prove his guilt beyond a reasonable doubt.

I respectfully dissent.

SUMMERS, Justice (dissenting).

The Court's ruling today opens wide the door to pretrial discovery in criminal cases. This result must follow for we shall find it impossible to rationally distinguish this fac-

tual situation from the numberless fact situations future cases will present.

In effect this case changes the concept of the underlying premise of the criminal process in Louisiana. I have always believed, and this Court has always proceeded upon the basic assumption, that a criminal trial is an adversary proceeding in which the law grants many advantages to the accused, not least among which is the mandate that the law is served by doing justice, not by whether the government wins or loses. In this principle reposes the concept of fairness which has distinguished the American system of justice. Underlying today's decision, however, is the mistaken and erroneous premise that the criminal process is an unequal contest between the State and its immense investigatory resources and an often poor and uneducated defendant.

The error of the latter view is made clear by the words of Judge Learned Hand in United States v. Garsson, 291 F. 646, 649 (S.D., N.Y.1923) when he said:

Under our criminal procedure the accused has every advantage. While the prosecution is held rigidly to the charge, he need not disclose the barest outlines of his defense. He is immune from question or comment on his silence; he cannot be convicted when there is the least fair doubt in the minds of any one of the twelve. Why in addition he should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see. . . . Our dangers do not lie in too little tenderness to the accused. Our procedure has been always haunted by the ghost of the innocent man convicted. It is an unreal dream. What we need to fear is the archaic formalism and the watery sentiment that obstructs, delays and defeats the prosecution of crime.

Though uttered fifty years ago the timeliness and wisdom of Judge Hand's words will not escape even the casual observer of our times.

Today's decision strikes down a policy to which this Court has adhered for many years. See State v. Hunter, 250 La. 295, 195 So.2d 273 (1967). A policy we repeatedly declared we would not change, but would leave to the legislature to alter if change were forthcoming.

At a time when hope endures in a Nation troubled and disrupted by crime and violence that the law will come forth with a remedy for these ills, this Court ventures into a program of innovation which can only impair the punishment of criminals, proliferate the ancillary proceedings attending criminal trials and overburden the already severely taxed machinery of criminal justice.

I respectfully dissent.