267 So.2d 559

**STATE of Louisiana**

v.

**Ralph JONES and Donny McManus.**

**No. 51755.**

Oct. 4, 1972.

racial prejudice and references to the accused's failure to testify.

Henry C. Walker, IV, Michael R. Mangham, Shreveport, for defendants-appellants.

William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Dan J. Grady, III, Asst. Dist. Atty., for plaintiff-appellee.

PER CURIAM.

Defendants were charged with theft, with alternate counts of receiving stolen goods, and, after a trial by jury, were found guilty of theft, and sentenced to three years at hard labor. Seven bills of exceptions were reserved and perfected to alleged erroneous rulings of the district court, six of which form the basis of this appeal. The seventh was expressly waived in brief.

At about 3:00 A.M. on the morning of August 20, 1970, Mrs. Daniels, who resided on Frostwood Street in Shreveport, was awakened by the barking of neighborhood dogs. She went to the window and observed a young man wearing a white shirt run from beside the newly constructed, unoccupied house across the street from her residence, get into a U-Haul panel truck, and drive slowly away.

Mrs. Daniels called the city police and reported the prowler. An officer (Officer Turner) was dispatched to her residence to investigate, and after talking for a short time with Mrs. Daniels, he put out a radio alert, reporting the description of the prowler and the truck given him by Mrs. Daniels. A few minutes later anoth-

...er Shreveport police officer (Officer Robertson) observed a U-Haul panel truck drive eastward on Flournoy-Lucas Road and enter La. Highway #1.[1] The officer followed the truck until it stopped at a gas station. The officer then pulled into the gas station and requested identification from two passengers of the U-Haul van. (The officer did not see the third occupant) They produced identification, and upon being asked if anyone else was with them, they told the officer that a third occupant of the truck had gone to the restroom.

When the officer inquired as to the contents of the truck, the defendants told him that there were air conditioners in the truck. Without opening the truck, the officer peered through the back window of the truck (using his flashlight) and observed two air conditioner compressors partially covered by blankets and observed that the copper pipe connections had apparently been sawed off. The defendants told the officer that they had purchased the air conditioning units from an unknown individual at a Shreveport bar around midnight the same night and that they had borrowed the U-Haul truck from their next door neighbor. Meanwhile two other officers had arrived at the scene and had looked in the restroom for the third member of defendants' group. They were unable to find him in the area.

Officer Robertson radioed Officer Turner and requested that he attempt to determine if any air conditioning units had been stolen from the area in which the prowler had been reported. Shortly thereafter Officer Turner radioed Officer Robertson and reported that he had found that two units had apparently been removed from residences on Bayonne St., within several blocks of the reported prowler incident, and that the copper pipes had apparently been sawed off. Armed with this knowledge, Officer Robertson entered the U-Haul truck and obtained the serial numbers from the air conditioning units.[2]

The defendants were then taken to police headquarters,[3] and the owners of the two residences from which air conditioner compressors had apparently been removed were called. It was learned that the serial num-

---

1. The prowler incident was reported in a subdivision located in the southwestern portion of Shreveport. The U-Haul van was first observed leaving the southeastern portion of the city. Flournoy-Lucas Road runs in an east-west direction through the southern portion of Shreveport and passes through the subdivision where the prowler incident occurred.

2. Officer Robertson contends that he had the defendants' permission. The defend-

ants deny this. The trial court found that, at this point, the officer had probable cause to believe that the truck contained stolen air conditioners.

3. The police officers testified that the defendants accompanied them voluntarily while the defendants testified that they were arrested and then taken to police headquarters.

bers on the units in defendants' truck matched the serial numbers of units belonging to the owners of the residences on Bayonne Street. The defendants were then formally arrested and advised of their rights.

### Bill of Exceptions No. 1

Bill of Exceptions No. 1 was reserved to the trial judge's overruling of defendants' Motion to Quash the Bill of Information to suppress evidence allegedly illegally seized.

Defendants contend that the arrest was illegal, since no warrant had been issued for their arrest, the officers were outside their jurisdiction (outside the city limits of Shreveport), and the officers did not have probable cause to believe that they had committed an offense. Hence, they contend that the two air conditioners and the hacksaw found in the truck were obtained as the result of an illegal search, since it was without a warrant and was not incident to a lawful arrest.

The State contends that the officers had permission to enter the truck (from whence they obtained the serial numbers of the air conditioners), and alternatively, that the evidence was seized as the result of a lawful arrest.

The trial judge held that the police officers had probable cause to believe the defendants had committed a felony—possession of stolen property—and hence the evidence was seized pursuant to a lawful arrest.

It is unnecessary to determine when the arrest occurred, whether at the gas station or at the police station, since we hold that the officers had probable cause to believe that stolen air conditioners were contained in the truck and hence were entitled to search it even though defendants were not yet arrested. An automobile, unlike a house or other building, may easily be spirited away if officers are required to leave the scene and go to a judge to obtain a warrant before conducting a search of the vehicle. Hence the rule has long been that an automobile may be searched without a warrant where the officers have probable cause to believe that the automobile contains articles that they are entitled to seize. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 453 (1925); Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629 (1931); Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

While more than mere suspicion is required, knowledge to an absolute certainty is not required. It is sufficient that the officer have *probable cause to believe* that the automobile contains articles he is en-

titled to seize. In the case before us we agree with the trial court that at the time ·Officer Robertson entered the truck and conducted the search he had probable cause to believe that it contained stolen air conditioners.[4]

■ Defendants also complain that the initial act of the police officer, after having been told by them that the truck contained air conditioning units, of looking through the rear window of the truck with his flashlight constituted an unreasonable search. We find it unnecessary to determine whether this was an unreasonable search, since we hold that this was not a search. The officer merely observed that which was in plain view. See United States v. Lee,[5] 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Hayden, 140 F.Supp. 429 (U.S. D.C. Maryland 1956). Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

Defendants complain that they were arrested at the gas station, which is admittedly outside the city limits of Shreveport, and that the arrest is illegal since the officers who made the arrest were city police officers. Defendants testified they were told they were under arrest a short while after the search of their vehicle was con-

---

4. At the time that the search was conducted, Officer Robertson did not know that the air conditioners in the truck were stolen. That was ascertained a couple of hours later. However, he did know that a prowler had been observed in a south Shreveport subdivision driving a U-Haul van; that defendants were driving a U-Haul van (the officer testified that he assumed that the occurrence of U-Haul vans at 3:00 A.M. would be rather low); that the theft of an air conditioner compressor had occurred in this same subdivision two days earlier; that a fellow officer had noted that there were two vacant concrete foundations (upon which air conditioner compressors of this type are customarily placed) in the same neighborhood within a couple of blocks of the prowler incident and that the units had apparently been removed by sawing off the copper pipe; that defendants had stated that there were air conditioners in the truck; that defendants were unable to produce proof of ownership of the air conditioners or of their right to the truck they were driving; that the copper pipes on the air conditioners in the truck appeared to have been sawed off; that defendants stated that they had purchased the air conditioners from an unknown stranger at a Shreveport bar at 12:00 midnight; and finally that the third occupant of the truck had apparently fled the scene. All of these circumstances combined gave the officers probable cause to believe that the truck contained stolen air conditioners.

5. "But no search on the high seas is shown. The testimony of the boatswain shows that he used a searchlight. It is not shown that there was any exploration below decks or under hatches. For aught that appears, the cases of liquor were on deck and, like the defendants, were discovered before the motorboat was boarded. Such use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." 274 U.S. 559, 563, 47 S.Ct. 746, 748.

ducted. · The officers, while admitting that they were outside their jurisdiction at the gas station, testified that the defendants were not arrested until they were taken downtown and it was positively ascertained that the air conditioning units were stolen.

We find it unnecessary to decide the factual issue of when the defendants were arrested. As we noted in Footnote 4, at the time the search of defendants' vehicle was conducted the officers had probable cause to believe that defendants' truck contained stolen air conditioners. Even if the officers were acting as private persons, as defendants contend, "A private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence." La.C.Crim.P. Art. 214.[6] The officers had probable cause to believe the defendants were in possession of two stolen air conditioning units, which is a felony, La.R.S. 14:69, and it was subsequently proven on the trial below that defendants committed the theft of the air conditioners, worth more than $100.00, which is felony theft. La.R.S. 14:67.

*Bill of Exceptions No. 2*

Bill of Exceptions No. 2 was reserved to the trial judge's overruling of defendants' motions for the production of evidence

and confessions; to compel disclosure of all evidence favorable to the defendants; for a list of witnesses; and for production of confessions and statements. Defendant admits that the Motion for Production of Confessions and Statements is moot, since the State did not have confessions from any of the defendants.

The Motion for Production of Evidence and for the State's list of witnesses was properly denied. State v. Mitchell, 258 La. 427, 246 So.2d 814 (1971); State v. Pesson, 256 La. 201, 235 So.2d 568 (1970). This case does not involve, as in State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), the possession of a substance which is criminal merely by virtue of its chemical composition.

Defendants complain of the trial court's action in overruling their Motion to compel disclosure of all evidence favorable to them. At the hearing on the motion, the State admitted that it had no evidence favorable to the defense. While we agree with defendants that the State cannot suppress evidence favorable to them, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), there is no indication in the record that the State suppressed any evidence favorable to defendants. Defend-

6. In Dunson v. Baker, 144 La. 167, 80 So. 238 (1919) we held that a private person may arrest one whom he has probable cause to believe has committed a felony, but he must subsequently show that the person has actually committed a felony. In the case at bar, it was shown on the trial below that defendants had actually committed a felony theft.

ants' argument in brief clearly shows that this Motion was an attempt to obtain a pretrial inspection of the State's evidence.[7]

### Bill of Exceptions No. 3

In its opening statement the prosecution stated, "Mr. Jones stated that he had purchased the unit." The defense objected on the ground that La.C.Crim.P. Art. 767 prohibits the State from adverting in the opening statement to any confession or inculpatory statement made by a defendant. The objection was overruled by the trial court.

█ La.Code of Criminal Procedure Article 767 provides: "The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant." There is no proscription against the use, by the State in its opening statement, of exculpatory statements made by the defendant.

The statement herein objected to is not a confession or inculpatory statement. It is not an "admission of incriminating facts". State v. Fink, 255 La. 385, 231 So.2d 360 (1970). The statement was in fact exculpatory, since the defendant was attempting to convince the police officers that he had purchased the air conditioning units rather than stealing them. There is no merit to this Bill of Exceptions.

### Bill of Exceptions No. 4

Bill of Exceptions No. 4 was reserved when the trial court allowed the State to introduce a light meter found at the residence from which one of the air conditioners was stolen, and a handprint found on the light meter. The objection was based on the grounds that:

1) the defendants were denied access to the evidence prior to trial;

2) the State failed to show a complete chain of possession; and

3) the identification of the handprint was improper and incomplete.

The first ground has already been discussed under Bill of Exceptions No. 2. It is without merit.

█ The police officer who found the light meter testified that after finding the piece of evidence at one of the residences, he placed it on the porch of the residence and continued his investigation. After he completed his investigation, he retrieved the light meter and turned it over to a fellow officer (who testified at the trial) who locked it up until the trial. The defense

---

7. The evidence allegedly suppressed (according to defendants' brief) was certain photographs and the State's list of witnesses. The photographs cannot be considered to have been suppressed, since they were introduced at the trial (see p. 16 of defendants' brief). The witnesses called by the State were subject to cross examination by the defense. There is no contention that the State failed to call a witness who would have testified favorably to the defendants.

objected that during the time the light meter was on the porch it could have been tampered with, although defendants offer no evidence that it was in fact tampered with.

This argument is frivolous. Although the officer did not have the light meter in his hands, he was at the residence completing his investigation. This was during the early morning hours, and the residence was unoccupied.

■ With regard to the handprint, the expert produced by the State testified that he had found nine points of identity between the handprint found on the light meter (which was found at the scene of one of the thefts) and defendant McManus's handprint. He admitted that some years ago the FBI required twelve points of identity in order to make a positive identification, but testified that at present the FBI required as few as six points in order to make a positive identification. He further testified that he was positive that the print on the light meter was the palm print of defendant McManus. The defense introduced no contradictory evidence.

We are unable to find that the statutes or decisions of this State require a certain number of points of identity in order for an expert to testify that the fingerprint or handprint is that of the defendant. In the absence of evidence that this witness was not competent, or was using an im-proper method, it was proper to allow the expert to testify that he was positive that the handprint was that of defendant McManus. The factual question of whether it was in fact the handprint of McManus was for the jury.

### Bill of Exceptions Nos. 5 and 6

■ Bill of Exceptions Nos. 5 and 6 were reserved to the admission of the testimony of Mr. Ray Heard of the Northwest Louisiana Crime Lab concerning the copper filings in a hacksaw blade found in the U-Haul van and his opinion that the copper pipes on the air conditioning units were cut off with the same kind of saw or a sawing motion. The objection was based on eight grounds (as set forth in defendants' brief):

1) The saw was not shown to belong to the defendants;

2) The truck was borrowed and the saw could have been the owner's;

3) The State did not check the saw for fingerprints;

4) Mr. Heard could not say that the copper from the pipes was the same as the copper in the saw blade;

5) Mr. Heard could not say that the saw at issue was used on the pipes;

6) The State did not keep the saw in its possession throughout the investigation but left it for several hours in the

unlocked truck on the parking lot at City Hall;

7) The State did not have the air conditioners in its possession throughout the investigation but left them for several hours in the unlocked van on the parking lot at City Hall; and

8) The State made no effort to check the air conditioners for fingerprints and indeed returned them to the owners immediately after the alleged crime, keeping only the copper pipes allegedly connecting the units to the system.

The hacksaw was found in the truck along with the stolen air conditioners. The copper pipes on the air conditioners appeared to have been sawed off. The evidence was relevant as tending to prove that this hacksaw, which was in the truck being driven by defendants, was used to cut the air conditioners from the residences to which they were formerly attached, and as such was admissible. La.R.S. 15:441. The fact that the saw was not shown to belong to defendants; that the truck was borrowed; that the State did not check the saw for fingerprints; that Mr. Heard could not say that the copper from the pipes on the air conditioners was identical to the copper on the saw blade; that Mr. Heard could not say that this particular saw was used to cut the copper pipes; or that the air conditioners were not checked for finger-

prints does not render Mr. Heard's testimony of the hacksaw inadmissible. It merely goes to the weight of the evidence.

The chain of possession of the hacksaw and air conditioners was sufficiently shown. The fact that they were left for two hours at 4:00 A.M. in the unlocked U-Haul van in the police station parking lot is insufficient to break the chain of possession, in the absence of some evidence that they were tampered with.

For the foregoing reasons, the conviction and sentence of McManus and Jones are affirmed.

SUMMERS, J., concurs in the result only.

BARHAM, J., dissents and assigns reasons.

BARHAM, Justice (dissenting).

I must dissent from the majority because I find merit in Bills of Exceptions Nos. 1 and 2. Bill of Exceptions No. 1 was reserved to the overruling of the motion to suppress the two air conditioners found in the back of the U-Haul-It truck. The majority finds that the officers had probable cause to believe that stolen air conditioners were in the truck and, therefore, were entitled to search for them. Armed with this conclusion the majority finds it unnecessary to meet the issues of when the arrests

occurred and whether the officers had authority to make the arrests outside their jurisdiction.

· The fallacy of this conclusion is that probable cause was acquired too late under the factual sequence to authorize the search and seizure. The first officer on the scene, while attempting to act in his official capacity and on less than suspicion, detained the truck *outside his jurisdiction*, questioned the occupants, and peered into the back portion of the truck. Only then was there probable cause for the search. Lacking jurisdiction for the detention and incidental scrutiny of the truck which established probable cause, he could neither arrest nor seize.

While patrolling in the early morning hours, Officer Robertson had received a radio alert to be on the lookout for a U-Haul-It truck since a report had been received of a prowler leaving a subdivision in such a truck. Shortly thereafter on the edge of the city limits Robertson saw such a truck and turned in behind and followed it. He called the officers who were still investigating in the subdivision and confirmed the type of truck. After travelling about one quarter of a mile out of the city limits, the truck pulled into a gas station and stopped near a pump. Robertson notified headquarters that he was going to question the occupants, and a back-up patrol car was dispatched to the station to render as-

sistance if necessary. He then detained the truck and the occupants and secured from the driver his driver's license. On questioning the occupants, Robertson learned that they were hauling air conditioners which they said had been purchased about midnight, but they could not produce any proof of ownership. Peering in the back of the truck Robertson saw the air conditioners with sawed-off copper tubing. Ordinarily the air conditioners would have been separated from the copper tubing connections by simply unscrewing the connection. The back-up patrol car arrived, and after giving the two officers the information he had learned, Robertson radioed the police in the subdivision to check vacant houses in the area for missing air conditioners. He then called his superior and asked him to come to the scene. Sergeant Whitney arrived, and shortly afterwards a second sergeant arrived but remained only a brief time. It was decided that the occupants of the truck should be allowed to leave, but first Robertson asked their permission to copy the serial numbers on the air conditioners. As he completed copying the serial numbers, he received a radio message that there were three air conditioners missing in the subdivision and that the copper tubing had been sawed in two. The occupants were then taken to the police station for questioning after having been detained approximately an hour at the gas station.

Under these circumstances it cannot be said that Robertson had knowledge that a felony had been committed or that he had reasonable cause to believe that an offense had been committed. (Art. 213(2) and (3), C.Cr.P.) He was not in pursuit to arrest when he followed the truck out of his jurisdiction. (Cf. Art. 231, C.Cr.P., and 4 Wharton's Criminal Law and Procedure (Anderson's ed. 1957) § 1592, where enforcement officials from one state are recognized to have authority to pursue persons reasonably believed to have committed a felony into another state. See also, Art. 213, C.Cr.P., as amended by Act 646 of 1972 to expressly grant this right of pursuit to officials from one jurisdiction to another within this state.) Thus there was no legal arrest and no basis for probable cause for the search in connection with an arrest. Whitely v. Warden of Wyoming Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971).

A police officer may, under appropriate circumstances and in an appropriate manner, stop and detain a person to investigate possible criminal behavior even though he does not have probable cause for an arrest. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972). Here, however, when Robertson left his jurisdictional territory, he lost his authority to act in his capacity as a policeman. Even if we were to hold that he could still act as a private citizen (4 Wharton, supra, § 1614), the authority granted to private citizens is restricted to arrests based upon probable cause (Art. 214, C.Cr.P., and 4 Wharton, supra, § 1614). So Robertson could not detain the occupants of the truck at the gas station.

Moreover, it would be unwise to let a police officer escape his obligations as a policeman and the apparent authority with which his uniform clothes him by allowing him to act in the role of private citizen. The relationships of a citizen to a citizen and a citizen to a policeman have too great a disparity to expect the same results from a confrontation between a citizen and a citizen and a confrontation between a citizen and a policeman. For example, few if any of us would let an ordinary citizen have our driver's license, detain our motor vehicle, and inspect its interior. Yet here, because of the uniforms, unauthorized policemen who had no greater authority than any citizen were able to accomplish these things.

Furthermore, a lengthy delay occurred while the police gathered information on the possible commission of a crime by the occupants of the truck, but no attempt was made to notify the proper officers with authority in that jurisdiction. When Robertson called in to check the type of truck described in the radio alert or when he called in to say that the occupants had stopped at the gas station, he should have asked

for assistance from the proper authorities with jurisdiction in that area, and maintained surveillance of the truck until they arrived.

Since there was no legal arrest, there could be no warrantless search pursuant to arrest, and that which was seized should have been suppressed.

Bill of Exceptions No. 2 was reserved when defendant was denied access to physical evidence including handprints and fingerprints, which he sought in order that he might have experts of his own choosing examine it in preparation for testifying. The majority does not even meet the issue raised by this bill as presented and argued by both the defense and the State. I am of the opinion that State v. Migliore, 261 La. 722, 260 So.2d 682, permits examination of physical evidence under orders and guidance of the court for protection and preservation of that evidence. There is no reason why Migliore should be restricted to narcotics. Examination of physical evidence is not discovery. Handwriting, ballistics, and fingerprint experts differ as do most expert witnesses, and the only means by which the defendant can defend against expert testimony by the State is to offer expert testimony of his own. I am of the opinion that Bill No. 2 is good insofar as it addresses itself to denial of access to the defendant for examination of physical evidence.

I respectfully dissent.