SUMMERS, Justice.
Ronnie Jones, Lionel Jones and Freddie Joseph were each charged in a single indictment with two counts of distribution of heroin, a violation of Section 966 of Title 40 of the Revised Statutes. In a jury trial Ronnie Jones was found guilty as charged on one count and guilty of the lesser included offense of possession of heroin on the other count. Lionel Jones was found guilty as charged on both counts. The jury was deadlocked as to one count against Freddie Joseph and no verdict was returned on that charge. He was found not guilty as to the other charge.
This appeal on behalf of Ronnie and Lionel Jones relies on three assignments of error.
I.
The defense asserts that the trial judge committed reversible error by denying pretrial inspection of any and all physical evidence seized.
All three defendants joined in an application for bill of particulars and prayer for oyer. They requested in the application for bill of particulars that they be advised whether any evidence in this matter had been subjected to scientific testing or chemical analysis of any kind, and, if so, they asked that the State furnish in detail such tests used and the results achieved. In response to this request, at a hearing held on February 13, 1976 to determine the sufficiency of the State’s response, the State’s attorney furnished defense counsel with a copy of the lab report — the analysis of the heroin furnished to the prosecutor by the chemist and held by the prosecutor as evidence against defendants.
In its prayer for oyer, the defense sought to require the State to furnish pretrial inspection of any and all physical evidence seized and intended to be used against the defendants. When the prosecutor answered that the defense was not entitled to this information, the trial judge agreed and defense counsel objected to this ruling. As presented at this point in the proceedings the defense request was properly denied. As phrased the request was too broad and all inclusive to come within the limited exceptions to the rule that the defense is not entitled to pretrial discovery. Later, however when defense counsel narrowed the request to ascertain the location of the heroin held by the prosecutor to “look at it,” the prosecutor said, “Well, file your motions, file your Migliore motions.” See State v. Migliore, 261 La. 722, 260 So.2d 652 (1972).
Still later, at the hearing on the sufficiency of the prayer for oyer, defense counsel said, referring to the heroin, “I just want to have the right to go and look at the evidence, not necessarily to take a chemical analysis; just to see that it’s there.” To verify his understanding of this statement of defense counsel, the trial judge inquired, “Well, you don’t want a chemist on that?”, and defense counsel answered “No, sir.”
At the trial thereafter on April 5-10, 1976 defense counsel offered to stipulate to the expertise of Officer Singer, who analyzed the heroin, but the State felt that Officer Singer’s qualifications should be made known to the jury. So Officer Singer recited his impressive education and experience, and he was found to be qualified by *1163 the court. Officer Herman Parrish, Director of the Southeastern Louisiana Crimi-nalistic Laboratory, also testified to his qualifications as an expert who was competent to test and analyze substances for heroin content. No objection was made by the defense to the qualification of these officers as experts. Both then testified in detail to the tests and analyses they conducted in arriving at the conclusion that the substance examined was heroin. Both officers were carefully and exhaustively cross-examined by the defense concerning their tests and analyses of the heroin.
At no time during the trial did the defense file the Migliore motion, seek a recess to conduct tests of its own, or object to the introduction of the testimony relating to the tests and analyses made by the State’s witnesses. Sufficient time transpired between the date of the hearing on the sufficiency of the State’s response to the application for particulars and prayer for oyer (February 13, 1976) and the trial (April 5, 1976) for the defense to file its Migliore motion, as they were invited to do by the State’s attorney. Such a motion would have enabled the State to be heard and the trial judge to make an orderly disposition and prescribe the time, place and manner of making the independent examination. A hearing on the sufficiency of the response to the application for bill of particulars and prayer for oyer does not afford the proper posture for resolution of such an issue.
The defense did not want a scientific analysis of the heroin, only to learn its location because defense counsel “may want to go look at it” — “just to see that it’s there.” With the issue so narrowly drawn, it is not shown that the trial judge abused his discretion in accepting the State’s representations that heroin was seized and in its possession. This was a sufficient reply to the application for bill of particulars, and since no scientific analysis of the heroin was sought, the showing did not warrant the inspection of the State’s evidence requested in the prayer for oyer “just to see that it’s there.”
It is implicit in the decision of State v. Migliore, 261 La. 722, 260 So.2d 682 (1972), relied upon so heavily by the defense, that sound judicial discretion decides whether in advance of trial a defendant should be granted the right to an independent scientific examination of a contraband drug in the State’s possession. Rule 16(d) of the Federal Rules of Criminal Procedure is to the same effect. It is the need for a scientific examination which justifies the production and inspection of the State’s evidence according to the Migliore rationale— that is to say, Migliore stands for the proposition that pretrial discovery and inspection of contraband drugs held by the State is only required when defendant’s guilt or innocence depends upon the identification of the substance in the State’s possession. Therefore, since the State furnished the defense with the lab report of the chemical tests and analysis performed by its expert witnesses, and the defense sought only “the right to go and look at the evidence, not necessarily to take a chemical analysis; just to see that it’s there”, there is no showing that “just to see that it’s there” would affect defendant’s guilt or innocence. The lab report furnished the requested information pertaining to the location of the heroin.
There is no merit to this assignment.
II.
At the hearing held to inquire into the sufficiency of the State’s response to the defense application for bill of particulars, defense counsel explained that one particular requested was the “rap sheet” or criminal record of the informant Earl Brown, a principal State witness. When the State’s attorney pointed out that the information was available to the defense from the court records, defense counsel replied that their clients were indigent and unable to employ an investigator to gather the information from the numerous court records throughout the State. The trial judge nevertheless ruled that the defense was not entitled to the production of the rap sheet.
*1164 In brief defense counsel argue that in a drug case where a known convicted felon, such as Earl Brown, is working with the police and is a principal State witness, the defense should have access to the rap sheet in the State’s possession for impeachment purposes. The contention is not valid.
Almost two months before trial the State’s attorney furnished defense counsel with the name of their witness, Earl Brown. On direct examination as a state witness, Brown testified to his many prior convictions in detail, to his incarceration in the state penitentiary at Angola and to his imprisonment in the federal penitentiary. He also admitted that he was then under charges for possession of narcotics, charges to which he pled guilty in federal court, and that he was awaiting sentence on these charges.
On cross-examination, defense counsel questioned Brown in detail concerning his prior conviction, which he readily admitted. Defense counsel also produced detailed information concerning Brown’s prior convictions and the charges presently pending against him. All of this information concerning Brown’s admitted criminal record was brought to the attention of the jury.
Defendant was not entitled to the information in the files of the district attorney. La.Rev.Stat. 44:3. There was, moreover, a full disclosure of Brown’s prior criminal record by the State and the defense thus fulfilling the defense plan to impeach Brown’s testimony by bringing his prior criminal record to the attention of the jury. State v. Brumfield, 329 So.2d 181 (La.1978). If Brown’s testimony could be impeached by reference to his prior criminal record the evidence produced would suffice to serve that purpose.
III.
Officer Toby Trevett of the Jefferson Parish Sheriff’s Office testified that he participated in the investigation and surveillance in this case. He enrolled Earl Brown in the case to help obtain evidence of a narcotic transaction. Brown was employed, he explained, because Brown was black and a narcotic addict with track marks on his arm; whereas, Trevett could not obtain the needed information because he was not an addict and he was not black. His involvement in undercover work would create suspicion among the “people that we were dealing with,” the black defendants in this case. He also chose Brown because Brown’s criminal record would provide further identity with the blacks trafficking in narcotics.
It is the defense contention that an effort was made to subpoena Officer Larry Taplin of the Orleans Parish Police, whose testimony would disclose that he undertook the same type undercover surveillance and investigation on behalf of the Orleans Parish Police, although he had no criminal record and was not a narcotic addict. Taplin’s testimony, according to their theory, would enable the defense to rebut the State’s evidence that people like Earl Brown were necessary in this type operation. This was important, according to the defense, because the State’s attorney referred in his closing argument to the necessity of using informants with Brown’s background.
Defense counsel argued that they used due diligence in an attempt to subpoena Officer Taplin on April 7 and 8, during the progress of the trial, but he was out of town and the subpoenas could not be served. Then on April 9, defense counsel during oral argument declared, “I saw him [Officer Taplin] in the building this morning.” At the same time he moved that an instanter subpoena be issued for Officer Taplin in order that he might ask him what he did prior to entering the drug scene, if he successfully penetrated the drug scene, if he made cases after penetrating the scene, and if he ever used narcotics prior to his entry into the drug scene.
Because he could not agree that the purpose for calling Taplin was relevant to the issues presented in the trial, the judge refused to order the instanter subpoena. Defense counsel objected and assigns the ruling as error.
The ultimate purpose of the Taplin testimony, as it is understood from defendant’s *1165 brief, was to show the type of individuals used in Orleans Parish in drug operations and the success they experienced and to compare this with a Jefferson Parish operation where a convicted felon was used as an undercover agent working within Orleans Parish. According to the defense, there was no reason why the citizens of Orleans Parish should be exposed to this type of individual by a Jefferson Parish sponsored operation, when Orleans Parish was able to use agents with Officer Taplin’s qualifications.
The relevancy of this testimony is extremely doubtful and the prejudicial effect of Officer Taplin’s failure to testify, if any, would be inconsequential. Nevertheless, if the trial judge did in fact err, the error would not warrant reversal of this conviction where the evidence of guilt was otherwise overwhelming. La.Code Crim.Pro. art. 921.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents.
TATE, J., dissents and assigns reasons.