284 So.2d 536 (1973)
STATE of Louisiana
v.
Christine Mary THARP.
No. 53026.
Supreme Court of Louisiana.
March 8, 1973.
On Rehearing September 24, 1973.
Rehearing Denied October 26, 1973.
*537 Pugh & Nelson, Sydney B. Nelson, Robert G. Pugh, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Special Asst. Atty. Gen., John A. Richardson, Dist. Atty., Fred C. Sexton, Jr., Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Defendant, Christine Mary Tharp, was convicted of a violation of La.R.S. 40:971, the distribution of a controlled dangerous substance, to wit: 3, 4 methylenedioxy-amphetamine (MDA). She was sentenced to pay a fine of $1,000.00 and costs or, in default thereof to serve six (6) months in the Parish Jail and, in addition, to be confined at hard labor for a period of one (1) year and committed to the Louisiana Department of Corrections. The trial court ordered that the execution of the one (1) year hard labor sentence be suspended and that the defendant be placed on supervised probation for a period of three (3) years. On this appeal, defendant has urged five (5) bills of exceptions.
The basis of the defendant's first bill of exceptions was the trial court's sustaining an objection by the prosecution that its witness, Detective Ruel B. Rives need not answer, on cross-examination, the incomplete question "What law do you rely on that makes you immune from this offense, when you carry". The witness had admitted earlier that he had received the capsule of MDA from undercover officers and that he delivered it to the crime lab. Defense counsel urges that he needed the detective's answer to make his point that "a mere delivery of a controlled dangerous substance from one party to another does *538 not constitute a crime without the requisite intent or guilty knowledge."
La.R.S. 40:970 provides, in pertinent part, that
"* * * it shall be unlawful for any person knowingly or intentionally to produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute or dispense, a controlled dangerous substance * * *"
Clearly, an essential element of the crime of distributing a controlled dangerous substance is guilty knowledge, State v. Smith, 257 La. 896, 244 So.2d 824 (1971), nevertheless, the trial judge has wide discretion in the discipline of his court to stop certain lines of questioning of a witness. La.R.S. 15:275. Although the trial judge did not so specify, it is apparent that the answer sought was irrelevant to the guilt or innocence of the accused. La.R.S. 15:441. Even if defense counsel's speculation as to the response he hoped to elicit from the detective was correct, the defendant was not prejudiced by the trial court's ruling. Neither was counsel prohibited from rephrasing his question or otherwise emphasizing his point, including having so advised the jury in his closing arguments, which he did. Further, the trial judge's general charges to the jury do, in fact, include the statement of law on specific criminal intent.
We find the ruling is supported by the law and was properly within the authority of the trial judge. The merit to this bill is lacking.
Bill of Exceptions No. 2 was taken when the trial court refused to allow defense counsel permission to look at Detective Rives' police report. Absent a showing that such report indicated that the statements therein were contrary to the sworn testimony of the officer, the trial court's ruling is in accord with this Court's jurisprudence, that police reports need not be disclosed to the defendant in connection with cross-examination of a police officer. State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); See also State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971); State v. Martin, 250 La. 705, 198 So.2d 897 (1967).
This bill lacks merit.
Bill of Exceptions No. 3 was taken to the trial court's denial of a Motion for an Acquittal. This procedural device (Motion for A Directed Verdict) is unavailable in a Louisiana criminal trial before a jury. State v. Williams, 258 La. 801, 248 So.2d 295 (1971); State v. Hudson, 253 La. 992, 221 So.2d 484 (1969).
Bill of Exceptions No. 3 is without merit.
Alleging that the question was "irrelevant, immaterial and hearsay", defense counsel reserved Bill of Exceptions No. 4 when the trial judge permitted the state to question its rebuttal witness on redirect examination thus:
"Q. (Mr. Sexton, Asst. District Attorney): Do you recall what the substance of our conversation was when I contacted you about coming to testify?
A. (Gordon Freeman): Yes, I do.
Q. Would you tell what it was?
A. When you first contacted me about this, you asked me if I had had a conversation with Chris Tharp, and I told you I had. You asked me the content of this conversation, and I told you what I have told the Court here today."
Earlier, defense counsel, after an extensive cross-examination of this witness, had elicited testimony that the witness had been contacted by the Assistant District Attorney who in fact had previously handled charges against Mr. Freeman. As defense counsel had originally opened the question of Mr. Freeman's "indebtedness" to the police, it was not improper for the prosecution to be permitted to try to counteract any mistaken impression of undue *539 influence by the prosecutor that the jurors might have been given.
Bill of Exceptions No. 4 is without merit.
Defendant urges in his Bill of Exceptions No. 5 that the failure of the trial court to provide a complete transcript of the proceedings which dealt directly with his Motion for a Mistrial (on the grounds that a prosecution witness had intimidated defense witnesses, thus preventing the defendant a fair trial) constituted reversible error. Counsel argues absent the transcript of his discussion in taking the bill, this Court is precluded a full review of his complaint.
The trial court's Per Curiam on this bill sets forth the facts behind this allegation:
"The facts are that after approaching the bench, defense counsel stated to the Court that one of the prosecution witnesses, a detective, had made statements to a defense witness which indicated that he had a file on the defense witness and would probably file charges on her. Defense counsel then asked to put on evidence out of the presence of the jury to establish those facts. The Court then asked defense counsel whether or not the detective had made any further statements to the witness and the defense counsel replied `No'. The Court then asked defense counsel if his witness was still present and intended to testify. Defense counsel replied `Yes'.
Having heard nothing that would prevent defendant from presenting the testimony of the witness and obtaining a fair trial, I then refused to stop the trial and allow the defense to present evidence to establish the above facts out of the presence of the jury. Defendant moved for a mistrial. The Court then denied the motions, an objection was made and a bill reserved. Shortly after this motion for a mistrial was made defense counsel learned of the fact that the above happenings were not taken down by the Court Reporter. The typed transcript Page 91, lines 7-8, contains the statement by defense counsel that`I don't believe that it was on the record,'. The Court had previously asked defense counsel to make his statement for the record. Transcript Page 91, lines 4-5. Defense counsel then restated his motion for a mistrial for the record but no attempt was made by defense counsel to make a statement for the record of the above cited factual basis for his motion. The motion was denied and a bill reserved. Thereafter, the defense presented its case and its witnesses and no contention was ever made that the defense witness did not testify nor testify favorably for the defendant."
The Court is constrained to agree with the trial judge and the state's answer that "even if the contentions of the defense were correct . . . and the defense had been allowed to make a record in that regard, the defense is only prejudiced if the testimony of the witness had been affected by the alleged actions. (However) there were absolutely no allegations at any time in this regard; either at the time of the original complaint, or at any time during or subsequent to the testimony of the witness in question."
Inasmuch as the trial judge gave defense counsel an opportunity to have made a record of the colloquy at the bench, but in fact he did not do so, we can see no legal basis for the relief sought. Evidence can be brought before this Court only by incorporating it in a bill of exceptions. La.C.Cr.P. art. 844. Further, there is no contention that the trial court's per curiam does not correctly set forth the facts relied upon.
This final bill of exceptions lacks merit.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., dissents and assigns reasons.
*540 DIXON, J., dissents.
BARHAM, Justice (dissenting).
Under the law and the evidence attached to the bills of exceptions in this case, at best it can be said that the conviction rests upon a tenuous foundation. However, I particularly dissent from the majority's conclusions in regard to Bills of Exceptions Nos. 2 and 3.
While the State's witness Detective Rives was on the stand, he referred to a written report in his hand to refresh his memory as he testified. When the defense asked for a copy of the report, the State objected, the objection was sustained, and the defendant reserved Bill No. 2, urging that she was entitled to read and review the report and use it to determine how reliable the report was as a means for refreshing the memory of the witness. This bill of exceptions is good. See my dissent in State v. Holloway, No. 52658 on the docket of this court, handed down February 19, 1973, La., 274 So.2d 699.
I also dissent from the holding of the majority under Bill of Exceptions No. 3 that the motion for directed verdict is unavailable in a Louisiana criminal trial before a jury.
I am of the opinion the conviction and sentence should be reversed.

ON REHEARING
BARHAM, Justice.
Defendant Christine Mary Tharp, was convicted of violating R.S. 40:971, by distributing a controlled dangerous substance, to wit: 3, 4-methylenedioxy amphetamine (MDA). She was sentenced to pay a fine of $1,000.00 and costs, or in default thereof to serve six months in the Parish Jail. In addition she was sentenced to one year in the penitentiary. The penitentiary sentence was suspended; defendant was placed on supervised probation for a period of three years. On appeal defendant urged five bills of exceptions. On this rehearing we take special note of Bill of Exceptions No. 2.
Bill of Exceptions No. 2 was taken during the testimony of Officer R. B. Rives, the officer supervising the undercover agents used in this case, who acted as liaison between them and the Shreveport Police Department. Rives testified on direct examination that he received the MDA on June 2. On cross-examination Rives was asked a number of questions concerning the case; specifically defense counsel inquired how Rives fixed the date as being precisely June 2 (the undercover agents had testified they weren't sure when they turned over the MDA to Rives). Rives answered, "That's what I have in my report, and I write my report up when I pick up evidence". Defense counsel then asked, "Do you have a copy of your report with you?" After Rives' affirmative response, defense counsel asked to see the report. The State objected. Defense counsel argued Rives' testimony was based on his written report, thus he was entitled to read and review the report for the purpose of seeing how reliable the information was. The objection was sustained by the court without it making any inquiry as to the nature of the report or when and by whom it was prepared. The court did not ascertain any of the circumstances surrounding the report or the nature of the testimony being given by reference to it.
The State has consistently argued that Detective Rives had merely refreshed his memory prior to taking the stand, and was testifying as to "present recollection revived" and not "past recollection recorded". They assert the jurisprudence of this state is to the effect of not allowing the defense a copy of a report, or even an opportunity to review it, where a witness has merely refreshed his memory. State v. Nails, 255 La. 1070, 234 So.2d 184 (1970); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); State v. Holloway, 274 So.2d 699 (La.1973). Further, they argue it was incumbent on the *541 defense to inquire into the matter to determine if the officer had no recollection of the matter, save his report. The defense also had the burden of establishing that the contents of the statement were contrary to the sworn testimony of the witness. Finally the State alleges if any error was committed it was of the harmless variety since the issue complained of was the date of the offense.
We note at the outset that this was a very close case. The testimony of the seven defense witnesses was in direct opposition to that of the undercover agents. Detective Rives' role as liaison officer between the agents and the Shreveport Police Department was an important one involving more than the mere transfer of evidence. By his own admission he was to assist the agents in any manner possible. He had been in the narcotics division for some 3 to 4 years and had participated in many investigations. Cyrex and Quebedeaux were the fifth set of agents he had used in the preceding two years. He determined where their investigation would center (Columbia Park). He was instrumental in the decision to disguise one of the agents as a Vietnam veteran in a wheelchair. His testimony concerned more than the date he picked up the evidence.
There is a very fine distinction between a "present recollection revived" and a "past recollection recorded". In instances involving a "present recollection revived", the witness is staking his oath on his present memory at the time and date that he testifies, whereas, in "past recollection recorded" the witness' recital is of the things he remembered in the past, i. e., at the time the report was prepared; he is swearing that the writing is an accurate record of his past recollections. Although Louisiana under former jurisprudence so restricted the use of memoranda for refreshing memory as to depart from the majority view in the country, that majority view neither then nor now has ever permitted over objection, the use of any and all material without a full explanation of the nature of the material used for refreshing the memory.[1] Our deviation from the better view arose from confusing the concepts of "past recollection recorded" as evidence, and memorandum for "refreshing recollection". According to the views of Wigmore[2] and McCormick[3], the strict rules which are applied to "record of past recollection" should not be applied to the process of "refreshing recollection". However, they have always advocated the retention of safeguards around the process of "refreshing recollection". Wigmore notes in § 762:
"On a general principle (§ 1861 infra), that has in view the risk of imposition and false aids, against which the opponent is entitled to the means of protection, the writing must be shown to him on request. Furthermore, as by this opportunity of inspection the opponent is guarded against imposition clearly apparent, so by cross-examination based on the paper he may further detect circumstances not appearing on the surface, and may expose all that detracts from the weight of testimony: * * *"
McCormick makes reference to two safeguards. First, the court is required to weigh the value of the memorandum for refreshing memory against the danger of undue and false suggestion, and must deny the use of such an aid if the danger of improper suggestion outweighs the possible value for actually refreshing the witness's memory. Second, the adverse party has a legal right to examine the memorandum before *542 it is used and to have the memorandum for his own use on cross-examination.
The federal courts, as well as many other state courts, have adopted these positions. The Federal Rules of Evidence, Rule 612, provides:
"Except as otherwise provided in criminal proceedings by 18 U.S.C. § 3500, if a witness uses a writing to refresh his memory for the purpose of testifying, either before or while testifying, an adverse party is entitled to have it produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness * * *."
The comments under this rule note the purpose is the same as that of the Jencks statute, 18 U.S.C. § 3500, to promote the search of credibility and memory. Wigmore, McCormick and numerous decisions are cited as authority for this position.
We reject the State's argument that this witness was testifying from memory refreshed outside the courtroom prior to taking the stand. The witness stated that his testimony came from his report which he had with him on the stand. If the officer was not refreshing his memory from his report, and if he was testifying as to past recollection recorded, the defendant had the right to so ascertain. It is the record itself which is the admissible evidence of past recollection recorded. In such instances the witness has no independent testimony of the recorded information, but actually vouches for the accuracy and veracity of the record. The witness swears to the truth and accuracy of his habits in recording information. He is not, under these circumstances, permitted to extemporize, to embellish or to vary that record by his testimony. The rules of evidence surrounding the admissibility of past recollection recorded are far more strict than the requirements for testimony of memory refreshed.
The report prepared by Officer Rives bore a direct relationship to the subject matter of the witnesses' testimony, and indeed to the credibility of the two undercover agents who testified for the State. These two agents, each of whom had been a narcotics officer for some 2 to 3 years, and each of whom had participated in 8 to 12 undercover assignments lasting from 6 weeks to 4 months, must have handled literally hundreds of investigations. Officer Rives, although not undercover, also had been a narcotics officer for some 3 to 4 years. He too must have participated in numerous investigations. To expect any of these officers to remember the details of a specific investigation from memory alone is not only unreasonable but unrealistic. A logical inference is that their testimony about the events which happened some months prior to the trial, was based on their recollection of a recorded event as reflected in their written report, or a repetition of past recollection recorded. The principal issue in this case was the credibility of the witnesses. The production of the report may have proven the State's witnesses unreliable. The result of denying the defendant the right to examine the report was a serious impairment of her constitutional guarantee of confronting the witnesses against her.
We hold that the trial court erred in refusing to allow defendant to examine the report. Defendant had the right to establish the nature of the testimony given from a prior record to determine the accuracy and truthfulness of that testimony, or of the record itself. The trial court is obligated to monitor and control the testimony from a prior record. That court must determine if memory is actually refreshed as required by R.S. 15:279, which is the overwhelming view of the common law jurisdictions which we should follow in criminal prosecutions absent contrary statutory provisions. Here no such determination was made. The court disallowed the second safeguard when it refused to permit defendant to examine the report or memorandum, and to cross-examine the witness *543 for the purpose of determining the credibility of the testimony or the record.
Insofar as State v. Holloway, 274 So.2d 699 (La.1973), State v. Nails, 255 La. 1070, 234 So.2d 184 (1970) and State v. Franklin, 263 La. 344, 268 So.2d 249 (1972) are in conflict with this opinion they are overruled.
Having found merit in Bill of Exceptions No. 2, we pretermit consideration of the other bills reserved. We reverse defendant's conviction and sentence.

* * * * * *
SANDERS, Chief Justice (dissenting).
In the present case, Police Officer Rives refreshed his recollection of the case from his written report before taking the stand as a witness. Such a refreshing of recollection is a recommended practice for law enforcement officers, who work with scores of cases in the course of a month. The majority has reversed the conviction because the court refused to order that the State furnish defense counsel a copy of the report. I disagree.
As I evaluate the testimony, the witness was testifying from his memory refreshed outside the courtroom before taking the stand. In such a situation, the defense has no right to compel production of the police report. The following recent decisions of the Court are in point and support the trial judge's ruling: State v. Holloway, La., 274 So.2d 699 (1973); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971); State v. Nails, 255 La. 1070, 234 So.2d 184 (1970); State v. Martin, 250 La. 705, 198 So.2d 897 (1967); State v. Cooper, 249 La. 654, 190 So.2d 86 (1966).
I see no adequate reason for overruling this line of decisions, holding that, in the absence of a proper foundation, the State need not open its files to provide defendant the reports and statements of prosecution witnesses.
I respectfully dissent.
CALOGERO, Justice (concurring).
I join in the finding that defendant's conviction and sentence should be reversed, but for reasons different from those stated in the majority opinion.
I see no need in this case to pass upon the defendant's entitlement to have his counsel furnished a copy of the police officer's report, for two reasons.
First, even assuming that there was an error in not requiring the State to produce the report I do not find that it resulted in a miscarriage of justice, that it was prejudicial to the substantial rights of the accused or that it constituted a substantial violation of a constitutional or statutory right (Article 921, Code of Criminal Procedure), in view of the fact that the point at issue was the date on which the police witness had received the methylenedioxy amphetamine pill from the undercover agents, an irrelevancy in my opinion.
Second, I find no need to pass on this subject as I find an independent reason for overturning this conviction. In my view, defendant's motion for directed verdict (or as stated, motion for acquittal) should have been sustained, for I find no record evidence indicating that the State had proven an essential element of the crime, namely, guilty knowledge by the defendant that she was distributing a narcotic drug. And this is so, even in the face of disputed agent testimony that the defendant asked the agent if he wanted to purchase some MDA. Relative to the availability of a motion for directed verdict, see State v. Douglas, 278 So.2d 485 (La.1973) decided May 7, 1973. Relative to guilty knowledge being an essential ingredient of the crime of possession or distribution of narcotic drugs and narcoti paraphernalia, see State v. Johnson, 228 La. 317, 82 So.2d 24 (1955); State v. Maney, 242 La. 223, 135 So.2d 473 (1961); State v. McIlvaine, 245 La. 649, 160 So.2d 566 (1964); State v. Clack, 254 La. 61, 222 So.2d 857 (1969); State v. Richard, 245 La. 465, 158 So.2d 828 (1963); State v. Harris, 232 La. 911, 95 So.2d 496 *544 (1957); State v. Kreller, 255 La. 982, 233 So.2d 906 (1970).
SUMMERS, Justice (dissenting).
Although not squarely decided on this basis, this is another case where I believe the Court is reversing a conviction on its disapproval of the determination of guilt in the trial court. See State v. Prieur, 277 So.2d 126 (La.1973). The opinion begins its attempt at reasoning with, "We note at the outset that this was a very close case. The testimony of the seven defense witnesses was in direct opposition to that of the undercover agents." Testimony of all of these witnesses forms no part of the bill of exceptions relied upon for reversal of this conviction. Obviously the Court's reference to the conflict in the testimony of the witnesses for the defense and the prosecution is meant to intimate that this defendant may be innocent. It is a violation of the Constitution to usurp the prerogative of the trier of fact on the question of guilt or innocence. In criminal matters, this Court's appellate jurisdiction extends "to questions of law only." La.Const. art. 7, § 10.
Detective Rives was asked how he fixed the June 2 date as the time when he received the prohibited drug from the undercover agents. When he answered, "That's what I have in my report, and I write my report up when I pick up evidence," defense counsel sought a view of the written report, which was denied when the prosecutor objected.
What the opinion fails to recognize is that the testimony of Detective Rives concerning how he remembered the June 2 date was elicited by defense counsel on cross-examination. The prosecution made no effort by its questioning to include any reference to the memoranda in Detective Rives' testimony. In this majority's impatience to overrule another line of cases decided by this Court, State v. Holloway, 274 So.2d 699 (La.1973); State v. Franklin, 263 La. 344, 268 So.2d 249 (1972); State v. Nails, 255 La. 1070, 234 So.2d 184 (1970), it has charged the State with the responsibility of raising the issue by the testimony of its witness when the defense brought out the reference to the report.
I recognize that the defense may have had the right, on proper demand, to inspect and use the report for purposes of cross-examination if Detective Rives had used it at the instance of the prosecution to refresh his memory while he was on the witness stand on direct examination. I cannot agree, however, that the circumstances of this case fit into that rule.
The authorities are generally in agreement that the rule does not extend to the situation when a witness has refreshed his recollection prior to the time of giving his testimony by use of the report out of court; only when a witness uses a paper to refresh his memory when on the stand may production and inspection of the writing be demanded. People v. Gallardo, 41 Cal.2d 57, 257 P.2d 29 (1953) (so holding under a statute which was held to be a codification of the common-law rule); 21 Am.Jur. 2d, Criminal Law, § 339; 58 Am.Jur., Witnesses, § 601-080.
I entertain serious doubts, also, in light of the fact that records of the police are privileged, that the report of the police officer, which has not been used on the stand, under the cricumstances of this case, may be demanded for inspection at all. La.R.S. 44:3; Gilbertson v. State, 205 Wis. 168, 236 N.W. 539 (1931).
The reference to Rule 612 of the Federal Rules of Evidence adds no weight to the majority opinion for that rule specifically excludes the right to inspect Government reports in criminal prosecutions "until said witness (having possession of report) has testified on direct examination in the trial of the case." 18 U.S.C. § 3500 (parentheses added).
And assuming that Section 3500 of Title 18 of the U.S.Code does contemplate the right to inspection in a case like this, we have specifically held that this Act of *545 Congress (the Jencks Act) applies only to federal prosecutions. State v. Gladden, 260 La. 735, 257 So.2d 388 (1972). The Gladden Case also stands for the proposition that a police report, not used on the stand, is not subject to inspection unless the party desiring the inspection shows that statements in the report are contrary to the sworn testimony of the police officer on the stand.
In any event, the ruling on matters of this nature rests largely in the discretion of the trial judge and will not be disturbed on appeal in the absence of an abuse or prejudice to the defendant. Neither has been shown here.
What the majority rule prescribes is that law officers cannot review the records of the crime to refresh their memory before going to court unless they bring these records into court and make them available for inspection by the defense when they are demanded.
I respectfully dissent.
NOTES
[1] R.S. 15:279 Refreshing memory of witness.

"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."
[2] 3 Wigmore, Evidence § 758-765 (Chadbourn rev. 1970).
[3] McCormick, Evidence § 9 (2d ed. 1972).