319 So.2d 907 (1975)
STATE of Louisiana
v.
Albert C. WHITEHURST.
No. 56243.
Supreme Court of Louisiana.
October 1, 1975.
Rehearing Denied October 31, 1975.
*908 Lewis Weinstein, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., Charles R. Lindsay, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Defendant Albert Whitehurst was charged with distribution of heroin, a violation of R.S. 40:966, was tried by jury, convicted, and sentenced to life imprisonment. Defendant reserved three assignments of error which he contends require reversal of his conviction.
Assignment of Error No. 1.
Defendant argues that the sentence imposed on him was cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution.
The offense for which defendant was charged occurred on or about February 11, 1974. He was charged in a bill of information on April 16, 1974 and tried on February 19, 1975. The statute under which defendant was charged, R.S. 40:966, was amended in 1973 to require that the sentence imposed for distribution of heroin be life imprisonment at hard labor. In addition, the punishment may also include a *909 fine of not more than fifteen thousand dollars. Defendant Whitehurst was sentenced to life imprisonment. He was not fined. Defendant argues that the imposition of a mandatory life sentence on a person convicted of distributing heroin constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution because the mandatory sentence requires the trial judge to impose the penalty without considering the age and background of the defendant or other mitigating circumstances which affect the gravity of the criminal conduct.
This Court previously held that the mandatory sentence of life imprisonment imposed upon conviction of a defendant for distribution of heroin was not cruel and unusual punishment. State v. Stetson, La., 317 So.2d 172, decided on July 25, 1975. There we held that this punishment "is not so severe as to be degrading, nor is it arbitrarily inflicted or unacceptable to contemporary society, [or] disproportionate to the crime."
Defendant has not directed our attention to the Louisiana constitutional provisions prohibiting cruel and unusual punishment. We note nonetheless that while the Louisiana Constitution of 1921 prohibited simply "cruel and unusual punishment," the 1974 Constitution bars "cruel, excessive, or unusual punishment" (emphasis provided). The addition of the word "excessive" may add a new dimension to the constitutional prohibition. Whether it does or does not,[1] we need not here decide, for it is our conclusion that mandatory life imprisonment, subject to probation and parole opportunities, but imposed without judicial consideration of any attendant mitigating circumstances, is neither excessive, nor cruel and unusual.
The assignment of error lacks merit.
Assignment of Error No. 2.
Defendant argues that the trial court erred in refusing to allow him to call to the stand assistant district attorney Charles Lindsay in order to impeach the testimony of the narcotics agent, William Kidd. Agent Kidd had testified at defendant's trial that the heroin in question had been sold to him for one hundred dollars. The assistant district attorney, however, had stated at a "Boykin" hearing at the time of the guilty plea of a co-perpetrator of the crime that the price was "approximately $200.00." Defendant wanted to call the prosecutor to the stand to repeat this testimony so as to impeach agent Kidd's credibility.
In order to impeach the credibility of a witness, an attorney must first lay a proper foundation in the manner required by R.S. 15:493 which provides:
"Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible."
The defense attorney did not ask Kidd if he had earlier told Lindsay the purchase price was $200.00. He merely asked Kidd whether he was sure that the sale price was one hundred dollars, not two hundred dollars, and Kidd insisted that the price was one hundred dollars. In fact, Kidd himself had never testified to a different amount. It was the prosecutor, who was *910 not present at the heroin sale, who stated at a "Boykin" hearing that the price was "approximately $200.00." No proper foundation was laid by the defense attorney.
Inasmuch as the sole asserted reason for calling the assistant district attorney as a witness was for this impeachment purpose and since the question was impermissible in light of failure to lay the proper foundation, there was no error in the trial judge's disallowing calling of the assistant district attorney.
Assignment of Error No. 3.
Defendant contends that the trial court erred when it refused to order agent Kidd to furnish defense counsel with a copy of his report. Defendant contends that the court's ruling violated State v. Tharp, 284 So.2d 536 (La.1973) because he was testifying from "past recollection recorded." The state argues that the witness' memory was merely refreshed as to pertinent dates as well as the license number of the vehicle and that his testimony about the conversations and the transaction was from what he remembered on the day of the trial, of the events.
While the witness testified, he had his file folder on his lap, but did not open it. He testified that he had reread the folder a week before the trial, the night before the trial, and the morning of the trial. He testified that these rereadings refreshed his memory as to dates and times and license plate numbers but that he recalled what took place the night in question very vividly and that he was testifying based upon his present recollection of the events. This situation is distinguishable from that in State v. Tharp, supra, where the witness testified that a certain fact was true because, "That's what I have in my report." Here, although the officer had the report with him on the stand, he testified from his memory, refreshed by reading over his report outside the courtroom prior to trial.
Hence, State v. Tharp, supra, is not controlling here, and the denial of the motion to produce was not error. See State v. Lane, 302 So.2d 880 (La.1974).
For the reasons assigned, the conviction is affirmed.
TATE, J., concurs and assigns reasons.
DIXON and BARHAM, JJ., dissent.
TATE, Justice (concurring).
With regard to the third assignment, the failure to allow defense access to the agent's report may not be reversible in view of the reliance upon past jurisprudence. However, by appropriate post-conviction proceedings, the defendant will obtain judicial review of his contentions that the report contained information favorable to his defense, withheld from him in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
I note this once again, in order to suggest that, presented with similar contentions, the trial court should exercise its discretion in favor of (at the least) an in camera inspection by it of the report, at the conclusion of direct examination of the witness. If the report contains material inconsistent with the agent's trial testimony or other material favorable to the defense, the accused should have access at least to such material for purposes of cross-examination and preparation of his defense. See concurring opinion in State v. Babin, La., 319 So.2d 367, 372. In federal criminal prosecutions, this practice both enables the trial court to assure a fair first trial as well as avoids the delay in finality and waste of judicial and legal resources involved by postponing the issue for determination in post-conviction proceedings. Further, if the prosecutor's good faith but unilateral decision not to give access at the trial proves wrong, the post-conviction hearings will result in voiding the first *911 verdict and in requiring the state to afford the accused a new trial.
The legislature has implicitly recognized this to be the path of fairness and judicial efficiency by expressly authorizing this procedure by its amendment of La.R.S. 15:574.12 F by Act 322 of 1975.
NOTES
[1] The state strongly urges to this Court that excessive punishment is and always has been considered cruel and unusual under the proscription of the 1921 Louisiana Constitution and of constitutions in other jurisdictions. He argues, therefore, that the addition of the word excessive in the 1974 Constitution does not add anything to the law.