WARD, Judge.
Calvin Duncan was convicted for the first degree murder of David Yeager and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. On appeal, Duncan pro se and his appointed counsel assign four errors.
At trial, the State presented the testimony of an eyewitness to the crime, Kristie Emberling. She testified that she and Yeager were waiting at a bus stop on the corner of North Roman Street and Esplanade Avenue in New Orleans at approximately eleven p.m. on August 7, 1986. Emberling testified that a man she later identified as Calvin Duncan and another man walked up to the bus stop. Duncan asked Emberling and Yeager if they wanted to buy or sell any marijuana. Ember-ling told Duncan that they were not interested, and the couple attempted to back away from the two men. Duncan made a comment about the ring Emberling was wearing and then suddenly said, “Hold it, don’t move, give me your money.” Under his jacket Duncan held a gun pointed at the couple. Yeager pushed the other man, and Emberling started to run. She heard a gunshot and looked back and saw Yeager limping approximately ten feet away. She *1272 then saw Duncan put his gun to Yeager’s head and fire. She rushed to Yeager who had fallen in the street. Duncan fled. The other man searched Yeager’s body, took his wallet and then also ran away.
Approximately six months later, the New Orleans Police received an anonymous tip that Calvin Duncan was the murderer. On March 7, Kristie Emberling positively identified Duncan from a photographic lineup. A warrant was issued for Duncan’s arrest, and newspapers and television publicized Duncan’s identification as a suspect. Meanwhile, Duncan had left New Orleans and joined the Job Corps program in Clac-kamas County, Oregon where, acting on the New Orleans warrant, Clackamas County officers arrested Duncan on August 6, 1982.
On appeal, Duncan’s counsel assigns as error the exclusion for cause of jurors opposed to the death penalty. Although Duncan was not sentenced to death, his counsel argues that a “death-qualified” jury is prone toward a verdict of guilty, thus denying the constitutional right to a fair, impartial and cross-sectional jury. The argument was rejected by the United States Supreme Court in Lockhart v. McCree, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Accordingly, this assignment of error is without merit.
Duncan’s first pro se assignment of error is that the statement he made to an Oregon sheriff’s detective on August 16, 1982 should not have been admitted into evidence because it was obtained in violation of his right to counsel.
The constitutional right to have counsel present during custodial police interrogation may be waived, and the State has affirmatively shown that Duncan waived the right. The Oregon detective, Loren Peterson, testified that before questioning Duncan, he informed Duncan of his Miranda rights including the right to counsel. Duncan responded that he understood the rights and he signed a card formally waiving the rights. Duncan then talked freely with Peterson without ever indicating that he desired to have an attorney present. We therefore hold that Duncan’s statement was not obtained in violation of his right to counsel, and it was not error for the Trial Judge to permit Detective Peterson to testify to the contents of that statement.
In his second assignment of error, Duncan argues that another statement, that he made to a New Orleans police detective on August 23, 1982, was inadmissible because obtained in violation of his right to counsel and furthermore, that the Trial Court erred in not holding a pre-trial hearing on his motion to suppress that statement.
There is nothing in the record to indicate that Duncan gave a statement on August 23, 1982. Nonetheless, Duncan’s counsel filed a motion to suppress which specifically referred to a statement made to New Orleans police on August 26, 1982. We can only assume that it is this August 26 statement of which Duncan now complains. The record shows that Duncan’s motion to suppress was denied by the Trial Court after a hearing on November 13, 1982. Furthermore, at trial, the Judge considered the issue of the statement’s admissibility before permitting the New Orleans detective to testify as to what Duncan told him on August 26. The record shows that the Trial Judge correctly ruled that the statement was admissible. The detective testified that he informed Duncan of his rights under Miranda and that Duncan acknowledged that he understood those rights and that Duncan then talked without any inducement or threat and that he did not request the presence of an attorney. Accordingly, this assignment of error is without merit.
In his third assignment of error, Duncan contends that the Trial Judge erred in refusing to allow defense counsel to examine a report from which a testifying police officer refreshed his memory and in refusing to inspect the report in camera.
On direct examination, Detective Loren Peterson, one of the Oregon officers who arrested Duncan, testified that although he knew no details of the murder and so told none to Duncan, at the time of his arrest on August 6, 1982 Duncan denied killing a white man in New Orleans and denied that *1273 he knew of a white female witness. Peterson further testified that Duncan told him that he felt that the victim was white because “only a white victim’s death would be worked to that extreme.” The prosecutor then asked Peterson whether Duncan had told him about “any letters or anything like that on August 6.” Peterson responded, “I have to refer to my supplemental report to be accurate on that.” Peterson was permitted to look at his report after telling the prosecutor that he would be able to refresh his memory from it. Peterson then testified that Duncan told him that he had read a newspaper account naming him as a suspect in a homicide. Later, apparently without again looking at his report, Peterson testified that in a statement made ten days after his arrest, Duncan told him that the woman who witnessed the murder would not be able to identify him because his appearance had changed since he was in New Orleans. Peterson further testified that Duncan mentioned correspondence with someone in New Orleans, a girl friend.
Duncan testified that he had left New Orleans in late January, 1982 and lived with a cousin in Los Angeles before joining the Oregon job program in April. Duncan denied telling the Oregon officers any particulars of the murder. He explained, however, that he knew some details of the crime before his arrest because his aunt in New Orleans had telephoned and written to him, telling him that she had learned from a television broadcast that he was wanted as a suspect in the murder. Duncan’s aunt testified and corroborated Duncan’s testimony.
During the defense questioning of Detective Peterson, defense counsel asked to review the report for purposes of cross examination. The Trial Judge denied the request. Defense counsel then asked the Trial Judge to review the report in camera to see if there were any inconsistencies with Peterson’s testimony. Again, the request was denied.
Duncan now argues that his counsel should have been permitted to examine Detective Peterson’s report because the officer had testified from the report. In support of this argument Duncan cites State v. Tharp, 284 So.2d 536 (La.1973), and its progeny. In Tharp, the Louisiana Supreme court adopted the rule that when a witness testifies from a writing, the writ ing and not his testimony, is in actuality the evidence. Opposing counsel is therefore entitled to examine the writing to determine the accuracy and truthfulness of the testimony and of the writing itself. This rule, in cases of “past recollection recorded,” does not apply, however, to situations of “present recollection revived,” such as that in this case, where the witness uses the writing merely to refresh his memory and then testifies and is subject to cross-examination upon his independent recollection of events.
Moreover, the testimony which Detective Peterson gave after looking at his report was favorable to Duncan because it showed that he had an independent source of knowledge about the crime, thus rebutting the inference that he was present at the scene. This then is not a case in which defense counsel would want to impeach the witness’s recollection by pointing up inconsistencies in his written report, and we cannot say it was error for the Trial Judge to deny him the report.
For the same reason, it was not error when the Trial Judge refused to make an in camera inspection of the report to ascertain if there were inconsistencies in Detective Peterson’s testimony. His testimony had already included plausible explanations to rebut any inculpatory inferences which could have been drawn from Duncan’s knowledge of the crime, and Duncan later presented evidence which corroborated these explanations. Under these circumstances, Duncan’s defense was not prejudiced by the Trial Judge’s refusal to search for inconsistencies in Detective Peterson’s report, and it was not error.
For these reasons, Duncan’s conviction and sentence are affirmed.
AFFIRMED.